CHALMERS M. BLAIR et al.

v.

MINNIE C. CARR et al.

*Filed at Ottawa March 28, 1896—Rehearing denied October 9, 1896.*

1. DEDICATION—*acknowledgment of plat by attorney in fact is insufficient.* The acknowledgment of a plat by the attorney in fact of the owner is insufficient to create a statutory dedication which will pass the fee to a municipality.

2. EVIDENCE—*when copies of papers relating to land are inadmissible.* Copies of an agreement and plat relating to land are not admissible in evidence when not certified or authenticated in any way, and there is no evidence that they were copies of any papers, and the originals are not accounted for in any manner.

3. ESTOPPEL—*effect of conveyance in accordance with plat made by another.* Conveyances of lots in a tract of land by the holder of the legal title thereof, describing such lots as being according to a plat made by another, do not estop the grantor or his heirs to assert title against the person making such plat, although they would thereby be estopped, as against lot owners, to dispute the plat.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

PHILETUS SMITH, (Q. A. SMITH, of counsel,) for plaintiffs in error:

The power to contract need not appear from the contract itself, but may be shown *aliunde*, and equity will enforce it. *Pensonneau* v. *Bleakley,* 14 Ill. 15.

That a conveyance may be made by estoppel there can be no doubt. *Cross* v. *Wear*, 153 Ill. 500.

Here is an estoppel *in pais* and by recitals and record, and is available in equity. *Stock Yards* v. *Wiggins*, 102 Ill. 514; *Winslow* v. *Cooper*, 104 id. 235; *Railroad Co.* v. *Railway Co.* 23 Ill. App. 531; *Wales* v. *Bogue*, 31 Ill. 464; *Mills* v. *Graves*, 38 id. 455.

An estoppel extends to the heirs. *Robbins* v. *Moore*, 129 Ill. 30; *Dintleman* v. *Gilbert*, 140 id. 597.

A party to a written agreement freely entered into, without fraud, is estopped to deny the truth of the recitals therein,—and this especially where it would work injury to others. *Wynkoop* v. *Cowing*, 21 Ill. 570; *Stewart* v. *Metcalf*, 68 id. 106; *Ettlesohn* v. *Kirkwood*, 33 Ill. App. 103.

The grantee in a deed is estopped to deny any fact admitted by the recitals therein. *Byrne* v. *Moorehouse*, 22 Ill. 602; *Orthwein* v. *Thomas*, 127 id. 554; *Pinckard* v. *Milmine*, 76 id. 453.

Parties claiming under one who is bound by a dedication are likewise bound by the same estoppel. 2 Herman on Estoppel, 1280; *Steam Engine Co.* v. *Steamship Co.* 12 R. I., 348; *Ewing* v. *Desilver*, 8 S. & R. 92.

Parties may be estopped by instruments not properly executed or acknowledged. *Wilson* v. *Hicks*, 40 Ohio St. 418; *Gridley* v. *Hopkins*, 84 Ill. 528.

THOMAS S. MCCLELLAND, for defendants in error.

CHARLES H. LAWRENCE, for defendant in error Henry V. Pierpont.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Minnie C. Carr, one of the defendants in error, filed her petition in the Superior Court of Cook county to establish her title to a strip of ground thirty-three feet wide, between Fifty-first and Fifty-third streets, and running from Michigan avenue to Indiana avenue, in the city of Chicago. She set out her title by a connected chain of conveyances from the United States to John D. M. Carr, her father, who died on November 28, 1882, intestate, leaving her his only heir-at-law. The plaintiffs in error, as heirs-at-law of James G. Blair, of Athens, Ohio, who died in 1878, answered the petition, denying the petitioner's title, and filed their cross-petition, claiming title through an alleged conveyance from petitioner's

father, John D. M. Carr, to the said James G. Blair, of a tract of land containing ten acres, including the premises in controversy, upon which "Blair's subdivision" was laid out. The city of Chicago answered, claiming the strip by dedication as a street in the plat of said subdivision. The other defendant in error, Henry V. Pierpont, also answered, and claimed title through a judgment and sale in an attachment suit of George L. Kedzie against said John D. M. Carr and another, under which a conveyance was made by the sheriff of Cook county to said Kedzie, and the title thereby conveyed subsequently passed to Pierpont, and his answer was made a cross-petition. The case was referred to the master, who reported that Pierpont was the owner in fee of the premises. The court overruled exceptions to the report, and entered a decree accordingly. The defendants in error are content with the determination as between themselves, and the only question to be considered is the action of the court in overruling exceptions of plaintiffs in error to the master's report and entering the decree against them.

All of the parties claimed title through John D. M. Carr, and it was proved, without contradiction, that on October 14, 1859, he was the owner in fee simple, by title of record, of the ten-acre tract of land on which the subdivision was laid out in the town of Hyde Park, Cook county, Illinois, embracing the strip in question. On that day, while the record title remained in him, there was recorded a plat of the premises, entitled "Blair's subdivision," made and acknowledged by Johnson M. Welch, as attorney in fact for James G. Blair. By this plat the tract of land was subdivided into fifty-seven lots, and the strip in controversy was left on the north side of the tract, not marked in any manner. The plat was made by a civil engineer named Potts, who was not county surveyor, and therefore there was no statutory dedication of the strip of land left as this was. (*Village of Auburn* v. *Goodwin*, 128 Ill. 57.) And if James G. Blair was the

owner of the tract at the time of the subdivision there would not be a statutory dedication of the strip, for the reason that the plat was made and acknowledged by Johnson M. Welch as attorney in fact. (*Gosselin* v. *City of Chicago*, 103 Ill. 623.) The title to the strip, therefore, remained in the owner of the tract, and the question in the case is, whether James G. Blair or John D. M. Carr was the owner of the tract at that time. If Blair was the owner, then his title descended to plaintiffs in error; and they sought to prove such ownership by a paper purporting to be a copy of an agreement between James G. Blair and W. Carr, dated August 5, 1859, in which W. Carr, assuming to act for himself as owner, agreed upon an exchange of the ten-acre tract, subdivided according to a pencil plat thereto annexed, for two-hundred and forty-four acres in Kane county, Illinois, with an agreement by Blair to reconvey certain lots in the subdivision to said W. Carr; and by testimony of said Johnson M. Welch, who acted as attorney in fact for James G. Blair, that he received a deed to Blair on the day the plat was filed for record, October 14, 1859, which he subsequently delivered to Blair. The copies of the agreement and plat were rejected by the master, and the court concurred in such action. It is claimed that this was error.

They were not certified or authenticated in any way, or shown to be copies of any paper, nor was the loss or destruction of the originals shown in any manner, and we think they were properly rejected. But the question whether they were or not is of very little consequence, for the reason that it was shown by the testimony of Johnson M. Welch and Thomas O. Osborn that there was some contract for such an exchange between Watson Carr and James G. Blair. Watson Carr was the father of John D. M. Carr, who owned the tract of land. He held a supposed power of attorney, recorded June 15, 1857, from his son, John D. M. Carr, who resided in Virginia. It did not appear to be acknowledged, but was

sworn to before a justice of the peace in the State of Virginia. The tract of land had been subdivided by Potts, and Welch was sent to Chicago by Blair to examine the plat and see that it was correct, and close up the transaction, and the important question is as to how that was done, and whether a deed from John D. M. Carr was made and delivered to Blair for the whole ten-acre tract. The witness Welch thought there was such a deed made and delivered, as before stated; but the master was of the opinion that Welch was mistaken as to the delivery of the deed for the ten-acre tract, and the court agreed with the master. The circumstances lead us to the conclusion that he was either mistaken as to the deed being made or delivered or that it was insufficient to convey title, and that the arrangement was subsequently carried out in a different way. According to the recollection of Welch the deed was given to him October 14, 1859, when the plat was filed for record. A fair conclusion from the evidence is, that Watson Carr had been acting in his own name, as he appeared to have acted in the supposed copy of the contract produced by plaintiffs in error, and on this occasion, October 14, 1859, Welch himself entered into a written contract, by which Watson Carr was to convey to him thirteen lots which he was to have out of the subdivision. Welch testified that ten days after that time James G. Blair came to him with another deed of the Kane county farm to be acknowledged, in place of the one delivered October 14, and this was because there was some error in the acknowledgment or in the name of the grantee. It is quite apparent from the circumstances that the first deed was made to Watson Carr, and that if a conveyance was made of the ten-acre tract, that was made by Watson Carr. The supposed deed was never recorded and never heard from in any way, and it is not strange there should be an honest mistake as to a deed having been made after such a lapse of time. If it was

to have been made the arrangement was changed, or abandoned for another arrangement.

On October 31, 1859, Watson Carr, as attorney in fact for the owner, John D. M. Carr, executed a deed to James G. Blair of forty-one of said lots, describing them according to the plat of Blair's subdivision.    John D. M. Carr afterwards conveyed two lots to Thomas O. Osborn, an attorney, as commission promised by Blair, and one to Felicia E. Welch, mother of the witness Welch, for legal services of her husband in examining the title, and he also conveyed the remaining thirteen of the lots to the witness Welch, in pursuance of the contract above mentioned with Welch.    On February 20, 1867, John D. M. Carr and wife made a quit-claim deed of the forty-one lots to James G. Blair, to confirm the conveyance made by Watson Carr as attorney in fact.    This quit-claim deed was doubtless made on account of the imperfection in the power of attorney.

The evidence for plaintiffs in error failed to show that their ancestor, James G. Blair, ever had any title to any portion of the tract except the forty-one lots, which did not include any part of the strip in question.    It is insisted, however, on their behalf, that John D. M. Carr, who had the legal title, was estopped to dispute the title of James G. Blair to the ten-acre tract, for the reason that he made the conveyances of the lots, describing them as being according to the plat of Blair's subdivision. These conveyances were the first ones made after the subdivision, and they were rather an assertion of title in the grantor than an admission of title in any other person.    By making such conveyances Carr recognized the plat, and he and his heirs would be estopped, as against lot owners, to dispute the plat.    (*Gridley* v. *Hopkins*, 84 Ill. 528.)    But by making such conveyances he did not admit title to the land in Blair.    They were inconsistent with any such admission.    He was claiming title in himself and conveying to Blair.

Pierpont introduced evidence of the attachment proceedings, and the conveyances thereunder by which he derived title. Plaintiffs in error, who failed to establish any title in themselves, are the only ones attacking the decree. The title of record was in said Pierpont, and the decree against plaintiffs in error was right.

The judgment will be affirmed.     *Judgment affirmed.*