PAYSON THOMPSON et al.

v.

PATRICK J. MALONEY et al.

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

1. PLATS—*ownership of fee in streets where plat does not constitute a statutory dedication.* A plat executed and acknowledged by an attorney in fact does not constitute a statutory dedication of the streets to the municipality, and the title thereto remains in the owner so long as none of the lots are sold; but if he sells lots by reference to the plat, title to the soil in front of such lots, to the center of the street, attaches to the lots conveyed.

2. SAME—*street need not be marked on plat as a street or way.* If a plat is made and recorded and the lots and blocks are designated thereon, with spaces left which fairly indicate they are set apart to the public, the spaces thus indicated are, presumptively, streets.

3. SAME—*when space will be presumed to be intended for one-half of a street.* If a space left on a plat is a part of the subdivision but not part of any platted lot, and extends clear around the subdivision, constituting on three sides one-half of the public streets, it will be presumed that the space upon the fourth side, though unmarked, was intended as one-half of a street, the other half of which it was expected by the owner would be dedicated from the adjoining property when platted; and in such case a conveyance, by reference to the plat, of a lot bordering upon such strip will pass the fee to the entire width of such strip, and not merely to the center thereof.

4. SAME—*effect where a plat is not made by the owner.* Although a plat is not made by the owner of land, yet if the plat is recorded and the owner conveys lots by reference thereto, he is bound by all the dedications and reservations shown thereon.

5. SAME—*plat referred to in deed becomes part of the deed.* If deeds convey lots according to their description upon a recorded plat, the plat and all particulars thereon shown are a part of the deed as though recited therein.

6. SAME—*effect where levy ignores plat.* If a recorded plat made by a stranger has been adopted by the owner by conveying lots with reference thereto by deeds of record, a levy of attachment against such owner upon the tract of land as unsubdivided will operate only upon such of the lots shown upon the plat as have not been conveyed by the owner, and a sale under such levy can create no rights or interests in the streets and alleys shown upon the plat, inconsistent with those of the owners of the lots.

7. SAME—*when dedication is binding upon all persons claiming under attachment sale.* If the owner of land recognizes and adopts a re-

corded plat of the same made by a stranger, and sells lots with reference thereto prior to the levy of an attachment writ against him upon the entire tract as unsubdivided, the plat, together with its dedication of the streets and ways shown thereon, is binding upon the plaintiff in attachment, the purchaser at the sale and all persons holding under him; and the latter have no right to re-plat streets into lots, as against the rights of abutting lot owners.

8. PARTIES—*parties owning fee in street are necessary parties to burnt records petition.* Parties purchasing lots with reference to a re-corded plat not sufficient to constitute a statutory dedication, are owners of an interest in fee, within the meaning of section 11 of the Burnt Records act, in the street upon which their lots abut, and are necessary parties to a burnt records proceeding to estab-lish title to the strip, reserved for such street, in the purchaser at an attachment sale of the entire tract of land as unsubdivided.

9. SAME—*what sufficient to give notice that lot owners are necessary parties.* If a plat is sufficient to give notice to a purchaser at an attachment sale of the entire tract as unsubdivided that the city is the owner in fee of the streets shown thereon if all statutory requirements in the making of the plat are complied with, it is also sufficient to give notice that purchasers of lots with refer-ence to such plat are necessary parties where the city has not acquired the fee by reason of irregularities in making the plat.

10. DEEDS—*notice of defects in title appearing of record is chargeable to grantee.* Notice of defects in the grantor's claim of title, such as grow out of and appear from the public records of deeds, is chargeable to the grantee, and he takes no better title than his grantor had.

11. INJUNCTION—*when injunction is a proper remedy.* Injunction is a proper remedy to prevent the placing of obstructions in a public street or way which the complainants, as owners of the lots abut-ting thereon, have the right to insist shall be kept open and un-obstructed.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HENRY B. WILLIS, Judge, presiding.

STEPHEN G. SWISHER, for plaintiffs in error:

The plat of Blair's subdivision is a part of the deeds by Carr and Kedzie and all subsequent grantors convey-ing by reference to the subdivision. *Wendell* v. *Whiting,* 142 Ill. 348; *Smith* v. *Young,* 160 id. 163; *Rusk* v. *Berlin,* 173 id. 634; *Henderson* v. *Hatterman,* 146 id. 555; *Railroad Co.* v. *Koelle,* 104 id. 455; *Piper* v. *Connelly,* 108 id. 646.

This is so even though the maker of the plat had no title to the land, provided the true owner thus makes the plat a part of his conveyance of lots. *Smith* v. *Young,* 160 Ill. 163.

Carr's sale and conveyance of lots according to the plat, to Blair, imply a grant or covenant to Blair and his grantees, including complainants, that the public streets indicated on the plat shall be forever open to the use of the public. *Earll* v. *Chicago,* 136 Ill. 277; *Rusk* v. *Berlin,* 173 id. 634; *Gridley* v. *Hopkins,* 84 id. 528; *Smith* v. *Young,* 160 id. 163; *Blair* v. *Carr,* 162 id. 362.

The right thus granted by deeds made according to the plat is that the strip shall remain open, not alone for use of the lot owner, but also the public. 2 Smith's Lead. Cas. (7th Am. ed.) 154; *Zearing* v. *Raber,* 74 Ill. 409.

This easement belongs to every lot owner in the subdivision. *Zearing* v. *Raber,* 74 Ill. 409; 2 Smith's Lead. Cas. (7th Am. ed.) 154.

Where, as in this case, it is a question of private right, it is not essential to the existence of the lot owner's rights and easements in this strip that the municipality accept the dedication. *Zearing* v. *Raber,* 74 Ill. 409; *Earll* v. *Chicago,* 136 id. 277; *Rusk* v. *Berlin,* 173 id. 634; *McDonald* v. *Stark,* 176 id. 456; *Smith* v. *Young,* 163 id. 174.

Nor is it essential to such easement that thirty-three feet is but half of an ordinary street, and the adjoining owner failed to leave thirty-three feet more to make a full one. *Earll* v. *Chicago,* 136 Ill. 277.

Where easements or servitudes are annexed to private estates and the case of complainants is clearly established, injunction will lie to prevent obstruction thereof. *McCann* v. *Day,* 57 Ill. 101; *Newell* v. *Sass,* 142 id. 104; *Turpin* v. *Dennis,* 139 id. 274.

Even where the strips are not designated as streets in the plat, still the lot owners purchasing by the plat are entitled to easements in the strips. *Chicago* v. *Drexel,* 141 Ill. 89; *Mason* v. *Chicago,* 163 id. 351; *Marsh* v. *Fairbury,*

163 id. 401; *Prouty* v. *Tilden,* 164 id. 163; *Clark* v. *McCormick,* 174 id. 164.

To protect such easements from invasion or injury, injunction in equity is the appropriate remedy. *Smith* v. *Young,* 160 Ill. 163; *Earll* v. *Chicago,* 136 id. 277; *Zearing* v. *Raber,* 74 id. 409.

FRANK H. GRAHAM, and JOSEPH A. O'DONNELL, for defendants in error:

When a dedication is relied upon to establish a right, the acts both of the donor and of the public authorities should be unequivocal and satisfactory of the design to dedicate on the one part and to accept and appropriate to public use on the other. The intention to dedicate is a vital, controlling element in such a grant. A dedication is not an act of omission to assert a right, but it is the affirmative act of the mind of the donor. *Trustees* v. *Walsh,* 57 Ill. 363; *Chicago* v. *Railroad Co.* 152 id. 571; *Grube* v. *Nichols,* 36 id. 96.

To constitute a dedication there must be an acceptance, by user or otherwise, and this within a reasonable time. *Lake View* v. *LeBahn,* 120 Ill. 92.

To sustain the claim of a highway by prescription, the proof must show a continuous, uninterrupted user, adverse and under claim of right for twenty years. No prescriptive right can be acquired by user to travel over wild and unenclosed lands. *Chicago* v. *Drexel,* 141 Ill. 101; *Chicago* v. *Stinson,* 124 id. 514; *Hamilton* v. *Railroad Co.* id. 242; *Winnetka* v. *Prouty,* 107 id. 223; *Littler* v. *Lincoln,* 106 id. 368; *Forbes* v. *Balenseifer,* 74 id. 187; *Trustees* v. *Walsh,* 57 id. 370; *Princeton* v. *Templeton,* 71 id. 72; *Fisk* v. *Havana,* 88 id. 209; *Insurance Co.* v. *Littlefield,* 67 id. 373; Elliott on Roads and Streets, 85, 116, 125; *Rees* v. *Chicago,* 38 Ill. 336.

The Blair subdivision was not a statutory dedication. Blair was not owner or proprietor on October 14, 1859. He never had title to the ten acres as a tract. *Baugan* v. *Mann,* 59 Ill. 492; *Gentleman* v. *Soule,* 32 id. 279; *Auburn* v.

*Goodwin,* 128 id. 65; *Kyle* v. *Logan,* 87 id. 66; *Railway Co.* v. *Ward,* 76 Ill. App. 543; *Trustees* v. *Walsh,* 57 Ill. 367.

The plat is void because acknowledged by an attorney in fact.    *Gosselin* v. *Chicago,* 103 Ill. 623.

The plat is not evidence.    *Dale* v. *Metzmaker,* 63 Ill. 38.

Mr. JUSTICE BOGGS delivered the opinion of the court:

John H. Thompson, of Cook county, Illinois, died May 16, 1891, leaving as his only heirs-at-law Payson Thompson and Victoria C. Thompson, the plaintiffs in error, and the defendant in error Watts C. Thompson, (an insane person,) and Benjamin F. C. Thompson, now deceased. This is a bill in chancery filed during the lifetime of said Benjamin F. C. Thompson by himself and the other heirs of the said John H. Thompson, deceased, (except said Watts C. Thompson, who, being insane, was made defendant,) against the defendant in error Patrick J. Maloney. The bill alleged that said John H. Thompson died seized of the title to lot No. 32 in block 1, in Blair's subdivision of part of the south-west quarter of section 10, town 38, north, range 14, east of the third principal meridian, in Cook county, and also of an easement in that certain strip, piece or parcel of ground thirty-three feet in width adjoining said lot 32 on the north, and running westward from Indiana avenue to the alley west of Michigan avenue, (describing the same by metes and bounds,) for the purpose of a private street or alleyway and of furnishing light, air and access to the said lot; that the title to the said lot and to the easement aforesaid descended to the persons hereinbefore named as the heirs of said deceased.    The bill further alleged that the defendant in error Maloney had built, or partially built, a fence, and also a cement sidewalk, across the east end of said thirty-three foot strip, and threatens to build said fence completely around said strip and entirely enclose the same, and prayed for a decree enjoining and restraining the said Maloney from in any way interfering with

the free and uninterrupted use and enjoyment of the said easement by said heirs of the said John H. Thompson, deceased. The defendant in error Mary D. Abel, by leave of the court, filed an answer to the bill and also filed a cross-bill. The cross-bill and answer alleged, in substance, that said Mrs. Abel was the owner of lot No. 1 in block 1, in said Blair's subdivision, and also of a like interest in the said easement in said thirty-three foot strip, and asked the same relief prayed in the original bill. The defendant in error Maloney answered the bill and the cross-bill, and replication was filed thereto. The cause was heard in open court, submitted to the chancellor, and a decree was entered dismissing the bill and cross-bill for want of equity, and dissolving the temporary injunction and awarding the defendant in error Maloney a decree for damages in the sum of $300. This is a writ of error sued out to reverse the decree.

On October 14, 1859, a map or plat entitled "Blair's subdivision of a part of the west half of the south-west quarter of section 10, T. 38 N., R. 14 E.," was recorded in the office of the recorder of deeds of Cook county, on page 60 of book 160 of maps. The plat is as follows:

The lots belonging to plaintiffs in error and to Mrs. Abel, and the strip or street here involved, are marked with an X.

The plat was executed by Johnson M. Welch, as attorney in fact for the said James G. Blair. The power of attorney so authorizing said Welch to sign, certify, execute and cause to be recorded said plat was proven to have been executed by the said Blair on the 10th day of October, 1859, and to have been recorded in the office of the recorder of Cook county on the 14th day of October, 1859, being the same day that the plat was filed for record. The plat not having been executed and acknowledged by Blair, but by Welch, as attorney in fact, did not constitute a statutory dedication of the streets and alleys to the city of Chicago. (*Gosselin* v. *City of Chicago,* 103 Ill. 623.) In such cases the title to the streets, alleys, etc., is in the owner of the tract platted, and there remains so long as he retains the ownership of all the lots shown on the plat. If, however, he sells a lot, describing it in the deed by reference to the plat, the title to the soil of the street in front of the lot, to the center of the street, by operation of law attaches to the fee of the lot, and the proprietor of the plat ceases to be the owner in fee of such portion of the street.

In *Clark* v. *McCormick,* 174 Ill. 164, speaking of a plat which failed to accomplish a statutory dedication of the streets and alleys, we said (p. 174): "Each purchaser of a block in the subdivision is presumed to have bought in view of the system of streets and ways designed by the proprietor of the plat to provide means of ingress and egress to and from all parts of the platted ground, not only for the use of the owners and occupants of the lots or blocks, but all who might desire to pass along such streets and ways. The arrangement of streets and ways formed a part of the consideration of the purchase of each block or part thereof, not only as between the original proprietor of the plat and those who purchase from him, but also as between all subsequent vendors and vendees. The original proprietor sold to his vendee the rights and privileges of the streets, and each subsequent

vendor passed such rights to his vendee. The law implies mutual agreements between all such parties that the streets shall always remain open for use as platted. * * * The fee to the strips in question is attached to the fee in the blocks upon which the streets abut, and rests in the owners of such blocks. It is not a title vesting in the owners of the blocks the ownership of the strips as separate, independent property, which may be detached from and sold distinct from the blocks, but it passes to any subsequent holder of the blocks."

In *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235, we said (p. 248): "The doctrine is, that a conveyance of a lot abutting on a highway or street, where there has been no statutory dedication, conveys the grantor's interest in the street to the center. * * * We hold, in accordance with the doctrine of the *Littler case*, 106 Ill. 353, that an acceptance is necessary to make a complete dedication under the statute; that until acceptance the fee does not vest in the municipality, but remains in the original proprietor. Hence a conveyance of the lots before acceptance carries the title to the center of the street."

In *Davenport Bridge Co.* v. *Johnson*, 188 Ill. 472, the plat of the town of Stephenson was not authenticated as required by law, and we held the fee to the streets did not pass to the municipality, but that the execution and recording of the plat operated as a conveyance to the abutting lot owners of the fee of the streets to the center thereof. This fee attaches to the ownership of lots and passes with each conveyance of the lots, and is burdened with the easement of use in the public. *Thomsen* v. *McCormick*, 136 Ill. 135, and *Henderson* v. *Hatterman*, 146 id. 555, affirm the doctrine that the grantees in the deeds for lots in a plat that does not fulfill statutory requirements take title to the center of the street on which such lots abut.

It will be observed the strip of ground in controversy is not given the name of a street on the plat. The plat

shows a space north of and adjoining lots Nos. 32 and 1 in block 1, and lot 1 in block 2, in which are found the figures "33" at the easterly and westerly ends thereof. It is urged there is nothing upon the plat to indicate that it was the intention of the proprietor of the plat to dedicate this strip to use as a street or public way, and it is also urged that the failure to name the space upon the plat as a street is fatal to the plat as a dedication of such space for such uses. In *Clark* v. *McCormick, supra,* we said (p. 170): "It was not necessary that a declaration, either oral or written, should be established in order to show it was the intention of the proprietor to dedicate the strips to such uses. Such intention may be established in any conceivable way by which it may be made manifest. A survey and plat alone are sufficient to establish a dedication, if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use.—*Smith* v. *Town of Flora,* 64 Ill. 93; *Godfrey* v. *City of Alton,* 12 id. 29; *Maywood Co.* v. *Village of Maywood,* 118 id. 61." In Elliott on Roads and Streets (2d ed. sec. 18,) it is said: "Where a plat of a town or city is made and recorded, and lots are designated thereon, with spaces left which fairly indicate that they are set apart to the public, the spaces thus indicated are presumptively streets."

It will be observed by reference to the plat that this strip extends also along the east side of the subdivision and there constitutes one-half of Indiana avenue, and along the south side of the subdivision, and also on the west side of the subdivision as far as the subdivision extends northward, at its westerly end, and that said strip there constitutes one-half of State street. The strip is one-half the width of each of the streets shown upon the plat, and we think that upon the face of the plat alone an intention should be declared to dedicate the strip in question to the use of a street or public way. In the construction of all maps and plats all doubts as to the

intention of the proprietor of the plat should be resolved against the proprietor. (Elliott on Roads and Streets,— 2d ed.—sec. 119.) The natural presumption arising from the face of the plat is, that the strip in question, being a part of the subdivision as platted and yet not being a part of any platted lot, and extending, as it does, on all sides of the platted lots and comprising one-half of the streets and avenues on other sides of the plat, was platted as one-half of a street, the other half whereof it is clear the proprietor of the plat expected and intended should be furnished out of adjoining premises when platted. There is nothing otherwise on the plat to overcome the presumption. That the presumption arises from the face of the plat that the strip in question was intended to be dedicated to the public use, is supported by the text of section 119 of Elliott on Roads and Streets, (2d ed.) to which is subjoined, in a note, a collection of adjudicated cases upon the subject.

Nothing that was said in *Village of Winnetka* v. *Prouty*, 107 Ill. 218, militates against the view here taken. In that case, in the spaces on the plat between the blocks which it was sought to contend should be regarded as representing streets, appeared three lines, two in black ink and one in red, the red line being in the center. The quantity in acres of each block appeared in figures on the plat, written in red ink, and our conclusion was that the quantities in each block included all within the red' lines drawn in the center of the streets, thus leaving no intervening space on the plat for streets.

It is, however, contended by the defendant in error Maloney, that at the time of the making and recording of the plat the title to the land so purported to be subdivided was not in said James G. Blair, who made the plat, but that one John D. M. Carr, now deceased, was the owner thereof. This contention is correct. On October 31, 1859, being about two weeks after the recording of the plat, the said John D. M. Carr conveyed lots Nos. 4

to 32, inclusive, as shown on the plat, to James G. Blair, the maker of the plat, describing the lots according to the description thereof on the plat. The said Carr conveyed to other parties other of the lots in the subdivision, describing them in accordance with the plat. These conveyances, however, did not include all of the lots in Blair's subdivision, nor did any of them expressly mention any of the streets or alleys shown upon the plat. Lot No. 1 of block 1, in Blair's subdivision, (the lot now owned by Mrs. Abel,) was not among those conveyed by said Carr up to the 17th day of September, 1862. On the date last mentioned one George L. Kedzie sued out an attachment writ against the property of said Carr, and caused the same to be levied upon the entire ten-acre tract of land covered by the subdivision made by Blair. The levy was upon the lands as a tract, the platting thereof being ignored, and the tract so levied upon was sold, subsequently, to said Kedzie by virtue of a judgment entered in the said attachment proceeding, and in default of redemption a deed therefor was executed and delivered to said Kedzie by the sheriff on the 29th day of June, 1864. On January 16, 1865, said George L. Kedzie conveyed by quit-claim deed all interest in the entire ten-acre tract to John H. Kedzie. In 1890 said John H. Kedzie conveyed to Thomas O. Osborn two lots in Blair's subdivision, describing the same according to the plat. One of these lots was lot 1 in block 1 in said subdivision, and that lot the said Osborn, in 1891, conveyed to Margaret Abel, the mother of the defendant in error Mary D. Abel. Upon the death of her mother, said Mary D. Abel, by inheritance and by quit-claims from the other heirs, obtained title to the said lot 1 in block 1.

It is thus seen that both Carr and Kedzie recognized the plat made by Blair and adopted the same as a plat and subdivision of the land. They each sold and conveyed lots as the same were platted in the subdivision made by Blair. When deeds convey lots according to

their description upon a plat, the plat and all the particulars thereon shown are to be regarded as composing a part of the deed as though fully recited and set forth therein. (*Henderson* v. *Hatterman, supra; Louisville and Nashville Railroad Co.* v. *Koelle*, 104 Ill. 455.) Though Blair did not own the land when the plat was made and filed for record, Carr, who was the owner, by conveying lots in the land as subdivided and platted by Blair, adopted and recognized the plat made by Blair, and must be held to have adopted the plat and subdivision made by Blair as his own plat, and he thereby became bound by all the dedications and reservations made by Blair in subdividing the land. *Gridley* v. *Hopkins*, 84 Ill. 528; *Smith* v. *Young*, 160 id. 163.

Such was the status of Carr's rights and interests in the lots when the writ of attachment against him in favor of George L. Kedzie was levied upon the tract of land which was covered by Blair's subdivision. The deeds made by Carr, which operated as a recognition by him of the subdivision of the land according to the plat made by Blair, were executed and recorded, and appeared of record on the public records of the county before the said attachment writ was issued. The plaintiff in attachment and the purchaser at the sale were therefore charged with notice of the execution of the plat by Blair and its adoption by Carr, the owner of the land and the defendant in the attachment suit, and therefore the sale under the judgment in attachment and the deed made by virtue thereof, though the levy and the deed described the entire tract of ground covered by Blair's subdivision, operated to convey only such interest and title in the ground, as subdivided, as remained in Carr when the levy was made. Carr had conveyed a number of lots, describing them as lots in Blair's subdivision, and such conveyances invested the grantees with the title held by Carr in the lots so conveyed, and also in all parts of the land shown by the plat to have been dedicated to

the public or for the use of the public, hence the levy of the attachment writ operated only on such of the lots in Blair's subdivision of which Carr had made no conveyance. George L. Kedzie, the purchaser at the sheriff's sale, therefore received no title to or interest in any of the streets, alleys or ways created by the plat made by Blair, inconsistent with the rights and interests of the owners of lots in said plat or subdivision. George L. Kedzie executed a quit-claim deed purporting to convey to John H. Kedzie the ten-acre tract of land by the same description as was contained in the deed made by the sheriff to him. This was in 1865. In 1890 said John H. Kedzie executed a deed conveying to said Osborn "lot 1 in block 1, and lot 9 in block 2, in Blair's subdivision," etc. The first described of these lots is the property now owned by the defendant in error Mary D. Abel. This deed was a personal recognition and adoption by John H. Kedzie of the subdivision made by Blair, and subsequently adopted by Carr to the same extent, as we have before said, as if the plat made by Blair had been inserted at large in the deed.

On December 15, 1892, said John H. Kedzie executed a quit-claim deed purporting to convey to one Henry V. Pierpont all the right, title and interest of the grantor in and to the ten-acre tract of land, describing the same by metes and bounds. This deed had no efficacy to defeat the conveyance which the grantor had previously made of the two lots to Osborn, nor to invest the grantee, Pierpont, with any greater interest, at most, than it would appear from the records of the county affecting the titles of lands therein, that the grantor had. As we have seen before, these records disclosed the grantor had no interest in the said ten-acre tract of land purported to be conveyed by the deed as an unplatted tract of land, but that his right, interest or title therein was of the lots or blocks as platted in the subdivision made by Blair. Kedzie, the grantor, by the deed to Osborn, which was

placed upon the deed records of the county nearly three years before Pierpont received his deed, conveyed lots in the subdivision as platted by Blair, and thereby adopted said plat and all the dedications thereof. ' Pierpont was charged with notice of this deed and with notice of the other deeds in the same line of title. Pierpont therefore obtained no rights or interests in any part of the said ten acres which had been dedicated to the public use as a way or street by the plat made by Blair.

On the 5th day of April, 1894, the said Pierpont filed a plat purporting to subdivide the thirty-three foot strip here involved. The plat was as follows:

The lots marked 1 and 2 on the plat, and the space between them, include this thirty-three foot strip, which, as we have seen, was dedicated through the medium of the plat made by Blair and adopted by Carr, and also by the grantors of said Pierpont, to the public for use as a street, and the title to which, as we have also seen, passed from said Carr, by his adoption of the plat made by Blair, to the owners of the lots abutting thereon.

. It being clear from the face of the plat that the strip in question so designated on the plat on all other sides of the platted lots was intended to and does constitute

one-half of the streets on the west, south and east sides
of the plat, this strip must also be regarded as intended
to constitute one-half of a street on the north side of the
plat, the other half whereof it was presumed by the pro-
prietor of the plat would be furnished from the adjoining
property when subsequently platted. The title of the
owners of lots abutting on this strip therefore extends
to the entire width of the strip or street. It will be
observed, also, that said Pierpont in his plat recognized
the Blair subdivision, and marked its location and north
boundary line as being the south line of the strip, thus
entirely excluding the strip from the Blair plat. He was
bound, however, as we have seen, by the Blair subdivi-
sion, and could claim no rights or interests in any part
of the ten-acre tract which constituted a street, alley or
public way under the Blair subdivision. It was not with-
in his power to withdraw a street or public way from
the plat made by Blair and re-plat the same into lots,
and claim the lots to be his individual property. We find
nothing in this record to authorize Pierpont to claim any
right or interest in said thirty-three foot strip to which
said Carr could not have successfully laid claim. Carr
adopted and recognized the subdivision made by Blair,
and it became and was valid, effectual and binding on
him before the levy was made under the attachment writ,
and the plat, together with the street and ways thereon
shown, was therefore a valid and effective dedication as
against the plaintiff in attachment, the purchaser at the
sale and all persons holding under such purchaser.

It is contended that the title of Pierpont to this strip
was involved and decided to be full and complete in him
in a proceeding under the Burnt Records act instituted
by Minnie E. Carr, the only heir-at-law of the said John
D. M. Carr, deceased, against the heirs-at-law of the said
John G. Blair, deceased. The petition of the said Minnie
E. Carr in that proceeding asserted title in herself as the
only heir-at-law of said John D. M. Carr, deceased, to the

said thirty-three foot strip.   Pierpont, the heirs of said
Blair and the city of Chicago were made parties defend-
ant, and upon a hearing a decree was entered declaring
Pierpont to be the owner in fee of the strip.   Neither of
the plaintiffs in error herein, the said Mary D. Abel or
any one having an interest as the owner of a lot in Blair's
subdivision, was made a party to the proceeding.   The
only parties to the proceeding were those whose interest
it was to claim that the strip was an unplatted part of
the ten-acre tract, except the city of Chicago.   The city
claimed title to the strip by virtue of the plat made by
Blair; but this claim of title was defeated, for the rea-
son that the plat made by Blair did not conform to the
requirements of the statute, and therefore was not effec-
tual to vest title to the streets shown upon the plat in
the city of Chicago.   The record in that case was brought
to this court on appeal, and the decree was affirmed.
(*Blair* v. *Carr*, 162 Ill. 362.)   All that was decided in that
case was, that as between Blair and Carr the title was
in Carr, and that as between Carr's heirs and Pierpont
the title was in Pierpont, and that Carr's conveyance
of the lots in the plat according to the plat as made by
Blair had no effect to invest Blair with any interest in
the ten acres other than such as passed by the deed to
the lots.   We there said (p. 367):   "By making such con-
veyances Carr recognized the plat, and he and his heirs
would be estopped, as against lot owners, to dispute the
plat.   (*Gridley* v. *Hopkins*, 84 Ill. 528.)   But by making
such conveyances he did not admit title to the land in
Blair.   They were inconsistent with any such admission.
He was claiming title in himself and conveying to Blair."

The defendant in error Maloney insists that the per-
sons to be made parties to establish title in a proceeding
under the Burnt Records act are such, only, as claim an
estate in fee in the property involved in the proceeding,
or such other persons as are grantees in a deed or deeds
of conveyance for such property whose deeds have been

recorded since the destruction of the records of Cook county by fire in 1871. Section 11 of the Burnt Records act (Hurd's Stat. 1899, p. 1372,) is referred to as supporting this contention. Without being understood to concede the correctness of the insistence, we may dispose of it, for all the purposes of this case, by saying the plaintiffs in error and Mary D. Abel, the owners, respectively, of lots 1 and 32 in block 1 in Blair's subdivision, etc., which lots abut upon the strip or street involved in the proceeding under the Burnt Records act, were, within the meaning of said section 11 of the Burnt Records act, to be regarded as owning an interest in fee in the strip which was the subject matter of the proceeding in question. The city of Chicago was made a party to the proceeding, and properly so, for the reason that upon the plat made by Blair the strip in question appeared to constitute a portion of a street of the city, the title to which passed by the plat to the city unless some defect in the execution of the plat should be found which would defeat the title of the city. The same plat, together with the deed records of the county, disclosed that the owners of lots in Blair's subdivision had legal rights and interests in fee in the strip in the event it was found the plat failed to confer title in fee to the city. The petition proceeded upon the theory the plat was insufficient to vest the fee to the strip in the city as a street, and that being true, the petitioner stood charged with notice and knowledge of the legal rule that if the plat should, because of some non-observance of statutory requirements, be insufficient to vest title in this strip, as a street, in the city, it had legal operation to attach the fee title to the strip to the title to the lots abutting thereon. If the plat was sufficient to call the attention of the parties to the fact that the city of Chicago was the owner in fee of the strip if all statutory requirements had been observed in making the plat, it was sufficient to call their attention to the fact that the owners of lots abutting on the

strip were interested in the fee of the strip in the event the city of Chicago, by reason of some defect in the plat, did not acquire the fee in the strip. As the petition averred the city of Chicago had no title to the strip as a street, it followed that the owners of the lots abutting on the strip were necessary parties to a proceeding which was designed to have the street declared to be the property of the petitioner as an individual.

The complainants in the original bill in this cause and the complainant in the cross-bill herein were not parties to the proceeding under the Burnt Records act, had no opportunity to defend or enforce their rights in the proceeding, and are not concluded by any finding or decree rendered therein.

The subdivision of the strip into lots by Pierpont had no effect to deprive the owners of the lots abutting thereon of any rights or interests they possessed in the strip as such abutting owners. Pierpont, after making the subdivision of the strip into two lots, conveyed the lots to the defendant in error Maloney by a quit-claim deed. The defects in Pierpont's claim of title were such as grew out of and were disclosed by the public records of the county. Notice of them was chargeable to Maloney, and he received no better title than that held by Pierpont, his grantor.

The strip in question constitutes a public way or street, or part of a street, which the complainants in the original bill, as owners of the lot abutting on said street or way, had the right to insist should be kept open and unobstructed, and the chancellor erred in holding to the contrary. The writ of injunction afforded an appropriate remedy to prevent the placing of obstructions in the street or way. *Smith* v. *Young,* 160 Ill. 163.

The decree will be reversed and the cause will be remanded, with directions to enter a decree granting the relief prayed in the bill.

　　　　　　　　*Reversed and remanded, with directions.*