(No. 27455.—)

CARL H. LAMBACH, Trustee, Appellant, *vs.* THE TOWN OF
MASON *et al.*, Appellees.

*Opinion filed January 20, 1944—Rehearing denied March 22, 1944.*

42

CARL H. LAMBACH, of Davenport, Iowa, and PARKER, BAUER & PARKER, of Effingham, for appellant.

DOWELL & DOWELL, GEORGE W. DOWELL, both of Salem, and N. Y. DOWELL, of East Peoria, for appellees.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Effingham county. The case involves the ownership of the fee of a portion of a public street in the town of Mason.

Appellant, Lambach, filed the suit as trustee. He claims the oil and gas in and under the portion of the street involved. His claim is based on certain oil and gas leases executed by the owners of the adjoining lots, which he holds by assignment. The particular street involved is Douglas street in Hardin's addition to the town of Mason.

It was alleged in the complaint that Hardin's addition was laid out and platted by the owner in 1859; that the town of Mason was thereafter incorporated by a special act of the General Assembly in February, 1865. It was further alleged that the plat of Hardin's addition was a common-law plat and constituted a common-law dedication of the use of the streets and alleys, the fee-simple title thereto being vested in the adjoining lot owners; that the municipality had only an easement and right to the use of the streets; that by reason of said common-law dedication, appellant's lessors, as owners of lot 5 in block 1, and lot 8 in block 5, in Hardin's addition, were the owners of the fee to the center of Douglas street.

Blocks 1 and 5 are of equal size. Block 1 lies directly south of and across Douglas street from block 5. Lot 8 is the southeast corner lot of block 5. Lot 5 is the northeast corner lot of block 1. Douglas street is 60 feet in width. It extends east and west between blocks 1 and 5. This street is the south boundary line of lot 8 and the north boundary line of lot 5. The land here involved is that portion of Douglas street lying between lots 5 and 8. Appellant claims that his lease on lot 8 includes not only the lot itself, but extends south to the center of Douglas street and east to the center of the street on which said lot abuts on the east, and to the center of the 16-foot alley abutting the lot on the west. He makes the same claim as to lot 5; that it extends north to the center of Douglas street, east to the center of the street on which it abuts on the east, and west to the center of the 16-foot alley on the west.

It was alleged in the complaint that after the execution of the leases which are owned by appellant, the town of Mason, without right or authority, executed a lease to one John R. Benson on that portion of Douglas street lying between said lots 5 and 8; that the owners of lots 5 and 8 joined in said lease; that Benson had wrongfully caused to be drilled an oil well on that portion of Douglas street and had produced large quantities of oil therefrom. The prayer of the complaint was that Benson and the town of Mason be enjoined from the further operation of said well; that they be compelled to account for the oil and gas produced from said well and for general relief. The prayer was later amended to include a prayer for the appointment of a receiver to operate the well and to impound the proceeds from such operation *pendente* and subject to the further order of the court.

The town of Mason, Benson and various other defendants filed answers to the complaint. Frontier Fuel Oil Corporation filed an answer admitting it had purchased a large amount of oil produced from the well. It tendered into court the approximate sum of $15,000. With the consent of the parties, a receiver was appointed to operate the well and to preserve the funds arising from such operation during the pendency of the suit. The town of Mason and certain individual defendants also filed a counterclaim. By their answer and counterclaim they alleged that the plat of Hardin's addition was a statutory plat; that the title to the streets in said addition was in abeyance until the organization of the town of Mason; that upon such organization the fee-simple title to the streets vested in the municipality, which they alleged was now the owner in fee of the portion of the street in question. They further alleged that a certain ordinance had been adopted regulating the drilling of oil wells and the production of oil and gas which, among other things, required a permit to drill within the corporate limits. They alleged that after the

leases, under which appellant claimed, were executed, the owners of said lots 5 and 8 joined with the municipality in the execution of the lease to Benson covering that part of Douglas street here involved; that thereafter the municipality granted a permit to Benson to drill the well in question; that the well was drilled on the north half of that portion of Douglas street lying between said lots 8 and 5; that appellant's assignor knew of the issuance of the permit to Benson and took no steps and made no effort to comply with the provisions of the ordinance relative to the payment of the cost and expenses of drilling the well; that by reason of such failure on his part to qualify and obtain a permit, he was estopped from claiming any interest in the oil and gas produced from that portion of the street involved.

The chancellor entered a decree finding that the plat of Hardin's addition was a statutory plat; that the town (now village) of Mason was the owner of the streets in said addition, in fee; that Benson's lease was a valid lease; that appellant was not entitled to recover. His complaint was dismissed for want of equity. By the decree, appellant and all those claiming under him were barred from any claim, right, title or interest in the oil well, or from the proceeds arising from the operation of same, and from any interest in the funds in the hands of the receiver.

The cause involves the ownership of the fee in the portion of the street on which the well is located. It also involves the rights of appellant under the oil and gas leases owned by him, as well as the rights of Benson under his lease. A freehold is, therefore, involved, and this court has jurisdiction on direct appeal. *Jilek* v. *Chicago, Wilmington and Franklin Coal Co.* 382 Ill. 241; *Greer* v. *Carter Oil Co.* 373 Ill. 168; *Carter Oil Co.* v. *Liggett,* 371 Ill. 482; *Stevenson* v. *Lewis,* 244 Ill. 147.

Under the pleadings and upon the record, two questions are presented for decision. The first question is the owner-

ship of the fee in that portion of the street involved. The second question arises under the applicable provisions of the ordinance referred to in the pleadings as ordinance No. 46. If the issue on the first question be determined against appellant, then the questions arising under the ordinance are wholly immaterial. If, on the other hand, appellant is found to be the owner of the oil and gas in that portion of the street, under his leases, then it will become necessary to determine whether his failure to comply with the applicable provisions of the ordinance operates as an estoppel against his claims in this case. The attorneys in the case, with commendable frankness, have thus limited the issues to these two decisive questions.

The parties are agreed that the ownership of the fee of the street in question is dependant solely upon whether the plat of Hardin's addition is a common-law or statutory plat. If it is a common-law plat, then the municipality only acquired an easement and right to use the streets. The fee is in the adjoining lot owners, and passed to subsequent grantees with the conveyance of the lots. (*Ryerson* v. *City of Chicago,* 247 Ill. 185; *Ingraham* v. *Brown,* 231 Ill. 256; *Owen* v. *Village of Brookport,* 208 Ill. 35; *Clark* v. *McCormick,* 174 Ill. 164.) Neither the possibility of reverter in the abutting lot owners (*Prall* v. *Burckhartt,* 299 Ill. 19) nor the title to the center of the street is an ownership separate from the ownership of the lots. It may not be detached and conveyed. or leased. as an interest or estate separate and distinct from the lots. It passes by operation of law to any subsequent owner of the lots. (*Thompson* v. *Maloney,* 199 Ill. 276; *Clark* v. *McCormick,* 174 Ill. 164.) It is also settled that if the village did not own the fee by statutory dedication, it could not convey or lease any portion of the street for the reason that it had nothing to convey or lease. . (*Waterloo Condensed Milk Co.* v. *Voges,* 316 Ill. 477.) It is also true that where the fee to the streets, and not merely an easement, is vested in the

municipality, it owns the minerals under the surface of the streets and lessees of the owners of the abutting lots have no right to take such minerals. *Union Coal Co.* v. *City of LaSalle,* 136 Ill. 119.

It, therefore, becomes necessary to first determine whether or not the municipality acquired the fee in the street in question by virtue of the plat of Hardin's addition to the town of Mason. Appellant contends that in laying out and platting the addition, the proprietor did not comply with the essential requirements of the statute; that there is not designated on the plat any stone or monument from which future surveys could be made, as required by statute. Hardin's addition was platted in 1859. The plat was filed for record April 18, 1860. The sufficiency of the plat must be determined from the statute of 1845, which was then in force. (*Gould* v. *Howe,* 131 Ill. 490; *Village of Auburn* v. *Goodwin,* 128 Ill. 57.) The applicable section of the statute in force at that time is as follows: "The county commissioners, proprietor or proprietors of the town, addition or subdivision of out-lots, by themselves or agent, shall, at the time of surveying and laying out the same, plant and fix at a corner of the public ground, or at the corner of a public lot, if any there be, and if there be none, then at the corner of some one of the in-lots in the town, and at the corner of each out-lot a good and sufficient stone, of such size and dimensions, and in such manner as the surveyor shall direct, for a corner from which to make future surveys; and the point or points where the same may be found, shall be designated on the plat or map." (Rev. Stat. 1845, chap. 25, sec. 19, p. 115.) This statute is in derogation of the common law. A plat which does not strictly comply with its provisions is not a statutory plat. *Clokey* v. *Wabash Railway Co.* 353 Ill. 349; *Nimpfer* v. *Village of Fox Lake,* 334 Ill. 46; *Village of Winnetka* v. *Prouty,* 107 Ill. 218; *City of Chicago* v. *Drexel,* 141 Ill. 89.

It will be noted that one of the requirements imposed upon the proprietor who plats an addition or subdivision is, that he "plant and fix at a corner of the public ground, or at the corner of a public lot, if any there be, and if there be none, then at the corner of some one of the in-lots in the town, and at the corner of each out-lot, a good and sufficient stone, of such size and dimensions, and in such manner as the surveyor shall direct, for a corner from which to make future surveys; and the point or points where the same may be found shall be designated on the plat or map."

Appellees do not challenge the fact that no such stone was placed or designated on the plat. They argue, however, that it is sufficient if the plat can be located by a surveyor from some monument shown on the plat or referred to in the certificate. They cite numerous cases tending to support this argument. However, the cases cited and relied upon are cases construing the corresponding section of the statute of 1874. The section of the 1874 statute is materially different from the statute of 1845. The statute of 1874 does not contain the definite requirement that the proprietor shall cause a stone to be planted. In lieu thereof it requires a reference on the plat to some known and permanent monument from which future surveys may be made. The proprietor is only required to plant a stone in case there is no known and permanent monument available to which reference can be made. (Ill. Rev. Stat. 1943, chap. 109, par. 1.) No case has been cited, and we have found none, which would dispense with the requirements of the statute of 1845 that a stone shall be planted and designated on the plat. There are many cases, however, construing the provisions of the 1845 statute, which hold that every requirement is indispensable in order to constitute a statutory plat.

In support of their contention on this point, appellees cite and rely on *Trustees of Schools* v. *Dassow*, 321 Ill.

346, *Village of North Chillicothe* v. *Burr*, 185 Ill. 322, *Village of Auburn* v. *Goodwin*, 128 Ill. 57, *Thomas* v. *Eckard*, 88 Ill. 593, and *Gebhardt* v. *Reeves*, 75 Ill. 301. In the case of *Trustees of Schools* v. *Dassow*, 321 Ill. 346, the court considered the validity of a plat made, acknowledged and recorded in 1903. The validity of this plat was determined by section 1 of the statute concerning plats, passed in 1874. The 1845 statute was not involved. The plat was definitely located by reference to the half-section line. It was there said that where a plat showed the exact location of the section line or half-section line in which the land is situated, and the exact point where it is crossed by the quarter-section line, this constitutes a sufficiently known and permanent monument to comply with the statute of 1874 for the reason that the court will take judicial notice that all government corners are marked with permanent monuments. The case of *Village of North Chillicothe* v. *Burr*, 185 Ill. 322, involved a plat which was made and acknowledged in 1887. The plat there involved was also controlled entirely by the provisions of the act of 1874. The objection urged to the plat in that case was that it was executed prior to the incorporation of the village. It was argued that for this reason the title to the streets could not become vested in the municipality when it became incorporated as such. This contention was not sustained. The case of *Village of Auburn* v. *Goodwin*, 128 Ill. 57, has already been referred to. The case of *Thomas* v. *Eckard*, 88 Ill. 593, involved a plat made, acknowledged and recorded while the act of 1845 was in force. It was there held that the plat was inoperative as a conveyance of the streets and alleys for the reason that it did not comply with the mandatory provisions of the applicable section of the statute of 1845. It was there said that the mandatory requirements of the statute were essential and could not be omitted or supplied by substituting something else in their stead. The plat was held

to be inoperative and ineffective. The case of *Gebhardt* v. *Reeves,* 75 Ill. 301, has also been referred to. It was expressly overruled in *Village of Auburn* v. *Goodwin,* 128 Ill. 57, as being inconsistent with all other decisions of the court on the subject. There is nothing in either of the cases cited and relied upon which tends to support the contentions of appellees.

There is no conflict between the decisions construing the 1845 statute and the statute of 1874. The former specifically required the proprietor to plant, and designate on the plat, a stone from which future surveys could be made. Under the statute of 1874 the proprietor is only required to plant a stone and designate its location on the plat in case no known fixed monument is designated, to which reference can be made for future surveys.

In an effort to bring this plat within the rule of the cases construing the statute of 1874, appellees argue that the plat does refer to known and fixed permanent monuments from which surveys can be made, and from which the ground platted can be located. This argument finds no support in the record. In this respect they rely exclusively on the fact that reference is made in the certificate to the fact that Hardin's addition lies north of and adjoining Starr's addition to the town of Mason and lies west of the Illinois Central Railroad. It is said that Starr's addition is a fixed and permanent monument from which future surveys can be made. With this argument we cannot agree. There is nothing on the plat or in the certificate which makes any reference to any definite point on the plat or in the boundary line of Starr's addition. The only reference is a statement in the certificate of the surveyor that Hardin's addition "being north of and adjoining to Starr's addition to Mason." It does not say that it adjoins Starr's addition at any designated point or points. It does not show what part of Starr's addition is referred to. The plat of Hardin's addition cannot, by any means, be located

on the ground. Neither can any point within Hardin's addition be located from the reference to Starr's addition. Moreover, if there was any specific reference on the plat or in the certificate to any definite point in Starr's addition, still Hardin's addition could not, from such reference, be located. The plat of Starr's addition is in the record. It recites that it comprises "all that portion of the North half of the Southwest quarter of the North East quarter of Sec ( ) Town ( ) North Range ( ) East lying West of the I. C. R. R. Boundary line except two reserves on the plat. Also all that portion of the North half of the North West quarter of the South East quarter (in Section, Town & Range as above) lying on the East side of the I. C. R. R. Boundary line."

There is nothing on the plat of Starr's addition or in any certificate in connection therewith from which that addition can be located. It will be noted that, in the certificate above quoted, the section, town and range numbers are all left blank. The only reference to any fixed or permanent monument is the statement that it lies east and west of the Illinois Central Railroad. Under this description it could well be located in any section and at any point on or adjacent to the line of the Illinois Central Railroad anywhere within Effingham county—a distance of more than 20 miles. From the description in the certificate on the plat, Starr's addition could as well be located in the southernmost section of land in Effingham county, which is crossed by the Illinois Central Railroad, or the northernmost section twenty and more miles away. With equal claim it might be located in any intermediate section crossed by the Illinois Central Railroad. No surveyor or anyone else could possibly locate either Starr's addition or Hardin's addition from anything appearing on either of the plats. We are not unmindful that a witness in this case testified that, as a surveyor, he could locate Hardin's addition from the plat itself. Regardless of this testimony we are not

required to believe that which is impossible. There is no point shown on the plat of Hardin's addition which a surveyor could use as a starting point to locate the boundary lines of the addition or any point within those lines. The reference to Starr's addition is equally ineffective. There is no point referred to in Starr's addition from which any survey could begin, by which any point in Hardin's addition could be located. But even if there was a definite point in Starr's addition referred to on the plat of Hardin's addition, no surveyor, by any process, could, under any circumstances, locate Starr's addition or any point therein. From all that is contained in the certificate, Starr's addition could be located at any point on the Illinois Central Railroad between the northern and southern boundary lines of Effingham county. The description would apply equally to any point along the railroad for that entire distance. From the plat and the certificate thereto attached, no one could determine in what section Starr's addition is located. Even a definite reference to a boundary line of Starr's addition would not be a reference to a known, fixed or permanent monument, unless there was some known, fixed or permanent monument from which such boundary line could be located. A reference to a boundary line of Starr's addition could hardly be said to be a reference to a fixed and permanent monument. An imaginary boundary line is not a permanent monument unless such line can be located with reference to fixed and designated monuments. The plat here is wholly deficient for the reason that no stone was planted on the plat from which future surveys could be made, as required by the statute of 1845. It would be equally deficient and ineffective under the statute of 1874, because there is no reference whatever to any known or permanent monument from which future surveys can be made.

The plat of Hardin's addition is, on its face, fatally defective for still another reason. Section 17 of chap-

ter 25 of the statutes of 1845 required that plats must be made "by the county surveyor, if any there be, of the county in which said town or addition is situated; but if there be no county surveyor in the county, then, and in that case, by the county surveyor of an adjacent county." (Rev. Stat. 1845, chap. 25, sec. 17, p. 115.) In *Village of Auburn* v. *Goodwin,* 128 Ill. 57, this court held that this requirement was mandatory; that a plat not made by the county surveyor was wholly inoperative as a conveyance, overruling its prior decisions to the contrary.

The plat here involved is signed by R. A. Howard. Following the name are some indistinct letters, which apparently are "a E C." This is followed by the name "J. M. Anderson." The name "Anderson" is followed by some indistinct and undecipherable characters. It does not appear from the plat or the certificate that it was made by the county surveyor of Effingham county or by his deputy, in his name, which was held to be indispensable in the case of *Village of Auburn* v. *Goodwin,* 128 Ill. 57. In that case the certificate was signed only by one purporting to be a deputy surveyor. It was held that no statutory effect could be accorded to the plat. The same conclusion was reached in *Thomas* v. *Eckard,* 88 Ill. 593, and *Trustees* v. *Walsh,* 57 Ill. 363.

The plat of Hardin's addition was not a statutory plat. Its acknowledgment and recordation did not operate to vest in the municipality the fee in the streets. The owners of lots abutting on the streets own the fee to the center of the streets. Appellant's leases from the owners of lot 5 in block 1 and lot 8 in block 5, extended to and included all of Douglas street lying between those lots. Under those leases, appellant was the owner of all the oil and gas in and under, and which has been, or may be, produced from, that portion of Douglas street, here involved.

This brings us to the question of estoppel raised by appellees, based on the failure of appellant and his prede-

cessor in title under his leases to comply with the provisions of the ordinance. This contention is that appellant is estopped from obtaining relief in this case for the reason that neither he nor his assignor complied with section seven of the ordinance and obtained a drilling permit. The right of appellant to obtain a drilling permit or to drill a well on the lands covered by his leases, is not involved in this case. Whether he was, or was not, entitled to obtain such permit in nowise affects his right to prevent others from drilling upon the land covered by his leases and producing therefrom oil and gas of which he is the exclusive owner. The lease executed by the village and the owners of lots 5 and 8, to Benson, after such owners had executed the leases covering said lots which are now owned by appellant, was wholly ineffective and inoperative to convey any right or interest in the oil and gas in and under that portion of Douglas street lying between said lots. Benson had no rights in the street or in the oil and gas produced therefrom. The village had no right to authorize him, by joining in the lease and issuing a drilling permit, or otherwise, to drill or operate a well on the public street in which the municipality had only an easement. Its acts purporting to authorize or permit him to do so were ineffective for that purpose.

All of the oil and gas produced from the well drilled in Douglas street by appellee Benson belonged to appellant, as assignee and holder of the leases on lots 5 and 8. The record shows, however, that both Benson and the village authorities in drilling the well were acting in good faith, believing the lease and permit under which the well was drilled were valid. There was no fraud or willful violation of the rights of appellant. Appellant acquired the leases on lots 5 and 8 by assignment, after the well had been completed. The record does not show that the owners of those leases at the time the well was drilled made any protest or objection to the drilling of the well. Such prior

owners disposed of all their interests under the leases by the assignments of the leases to appellant, after the well had been completed and was in operation. This suit was brought by appellant, alone. So far as the record shows, the filing of the suit was the first claim he made to the ownership of the oil produced from the well. It cannot be reasonably contended that the drilling of the well constituted a willful trespass on the rights of appellant, who acquired no rights in the property until a month after the well was completed. In view of these facts, we would not be justified in applying the rule announced in *Bruner* v. *Hicks*, 230 Ill. 536, *Zeigler* v. *Brenneman*, 237 Ill. 15, and *Gillespie* v. *Fulton Oil and Gas Co.* 239 Ill. 326. In those cases the wells were drilled and operated under circumstances from which it was properly found that the entry and drilling of the wells constituted a willful trespass. The rule there announced is well settled and is properly applicable to cases involving a willful trespass. Here, appellee Benson had the only lease which, on its face, purported to cover the area of ground within the street on which the well was drilled. Appellant's leases did not, in words, purport to include the ground within the street. They particularly described lot 5 in block 1, and lot 8 in block 5. The plat being a common-law plat, the ownership of the oil and gas passed under appellant's leases, by operation of law, to the center of the street.

The distinction between cases where the entry is made and wells are drilled in good faith, and cases where such entry and the drilling of the wells constitute a willful trespass, is clearly pointed out in *Guffey* v. *Smith*, 237 U. S. 101, 59 L. ed. 856. In that case the court found that the original entry was made in good faith and that certain wells were drilled under the belief that the driller of the wells had a valid lease on the property. Later he had actual notice of the existence of a prior lease. The court ordered that, in accounting for the funds arising from the

sale of oil produced from the first wells drilled, the defendant was entitled to be repaid the expenses incurred in drilling the wells and producing the oil. However, as to the wells drilled after he had actual notice of the prior lease, the court held that he was not entitled to recover such expenses.

Under the facts in this case, Benson is entitled, on the accounting, to credit for the reasonable cost and expenses of drilling, completing, equipping and operating the well and producing the oil which has been recovered therefrom, less the reasonable value of any of the equipment salvaged. In the accounting, the court will, of course, settle all rights in the funds involved, as between appellant and his lessors, under appellant's leases.

The decree is reversed and the cause is remanded to the circuit court of Effingham county, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*