CARL BELGUM, APPELLEE, V. CITY OF KIMBALL, KIMBALL
COUNTY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT,
LOWELL J. WILLIAMSON, INTERVENER-APPELLEE.
81 N. W. 2d 205

Filed February 22, 1957. No. 34036.

Bernard F. O'Brien, for appellant.

Philip M. Everson, Eric E. Smith, and Collins, Hughes, Martin & Pringle, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action for a declaratory judgment brought by the plaintiff, Carl Belgum, in the district court for Kimball County, against the City of Kimball, a municipal corporation located in Kimball County, Nebraska, defendant. The purpose of the action was to have declared the rights, status, and other legal relations of the plaintiff and the defendant city as to the oil, gas, and other minerals in and under the streets and alleys lying adjacent to real estate owned by the plaintiff and located within said city. The trial court entered judgment finding that the defendant city of Kimball had no interest in the oil and gas which had been produced or which in the future might be produced from the streets and alleys within the defendant city, and that the plaintiff was entitled to the oil and gas produced from under the streets and alley to the center of said streets and alley which lie adjacent to and abut upon his real estate.

The defendant city filed a motion for new trial. From the order overruling the motion for new trial, the defendant city appealed.

The case was tried upon a stipulation of facts agreed to by Carl Belgum, the plaintiff, the city of Kimball, a municipal corporation, defendant, and Lowell J. Williamson who intervened in the case, in substance as fol-

lows: The plaintiff is the owner, in fee simple, of Lot 14, Block 15, South Park Addition to the city of Kimball, Kimball County, Nebraska. The dimensions of the said lot are 40 feet north and south and 140 feet east and west. Pennsylvania Avenue is a street within the corporate limits of defendant city and is 80 feet in width. Pine Street, which is also a street within the corporate limits of defendant city, is 80 feet in width. The plaintiff's lot is bounded on the north by Pennsylvania Avenue, on the west by Pine Street, and on the east by a public alley which is 20 feet in width. The defendant is a municipal corporation incorporated under and by virtue of the laws of the State of Nebraska under the name of the Village of Kimball, Kimball County, Nebraska, on February 18, 1889, and since that time has continued to exist as a municipal corporation. On December 3, 1920, the defendant city became a city of the second class and has remained so ever since. On May 28, 1888, the then fee simple owners of the south half of the northwest quarter of Section 32, Township 15 North, Range 55 West of the 6th Principal Meridian, then Cheyenne County, Nebraska, now Kimball County, Nebraska, did plat said real estate into lots, blocks, and dedicated streets and alleys as provided by law, to be known as South Park Addition to Kimball. All of said South Park Addition to Kimball is included within the corporate limits of defendant city. The streets and alleys of said South Park Addition to Kimball at all times have been, and now are, used by the public as streets and alleys for the purpose of vehicular and foot traffic and for the construction of public utilities therein and thereon. On December 1, 1954, the intervener obtained an oil and gas lease from the plaintiff, together with other property owners in South Park Addition to Kimball, which is in full force and effect. On January 17, 1955, the governing body of defendant city adopted and approved ordinance No. 140 regulating development, drilling, and operations for oil and gas within the corporate

limits of the city. The real estate owned by the plaintiff as hereinabove described is located within the boundaries of drilling block E of ordinance No. 140. In accordance with the provisions of ordinance No. 140 the governing body of the city granted to the intervener a permit to drill a test well for oil and gas upon real estate belonging to the plaintiff. On February 3, 1956, the intervener secured an oil and gas lease from the governing body of the city which covered the streets and alleys abutting the plaintiff's real estate hereinabove described, together with streets and alleys abutting other real estate within South Park Addition. In accordance with the permit so granted, the intervener did drill a test well upon the real estate belonging to the plaintiff as hereinabove described and did establish production of oil from said real estate. Since the establishment of production of oil from said well, oil has been produced and is continuing to be produced from said well which has been placed on the market for sale, and the intervener is ready and willing to make, or cause to be made, in accordance with the provisions of ordinance No. 140, the division of the oil and gas produced from said well to the parties entitled thereto.

It is further stipulated by the parties that exhibit A, attached to the plaintiff's petition, is a true and correct copy of the plat and dedication of South Park Addition to the city of Kimball; that exhibit B, attached to the plaintiff's petition, is a true and correct copy of the oil and gas lease obtained by the intervener from the plaintiff; that exhibit C, attached to the plaintiff's petition, is a true and correct copy of ordinance No. 140 which was, as of date of trial, in full force and effect; and that exhibit A, attached to the intervener's petition of intervention, is a true and correct copy of the oil and gas lease secured by the intervener from the defendant city.

The dedication shows that the original owners of the land shown in the plat, having theretofore laid out an addition to the town of Kimball in Cheyenne County,

Nebraska, named South Park Addition to Kimball, and having caused the same to be surveyed and staked into lots, blocks, streets, and alleys, and a plat thereof to be made with reference to known monuments, accurately describing all the subdivisions of each tract numbering the same by progressive numbers and giving the dimensions and length thereof and the breadth of all the streets and alleys therein, made known that such subdivision was with their free consent and in accordance with the desires of the owners, and the streets and alleys were dedicated perpetually to the public use.

The instrument referred to in the agreed statement of facts, dated December 1, 1954, is titled "Community Oil and Gas Lease" between the lessor, whether one or more, and Lowell J. Williamson, lessee. Besides the plaintiff, there were other parties who entered into this lease. The lease gives the lessee the exclusive right to prospect, explore, or to mine for petroleum products and gas, and in the event of producing oil or gas in paying quantities, then the lessee was to pay royalties as designated in the lease to the respective parties as lessors in their proportionate share, as they agreed in the lease to pool their shares according to the amount of land owned by them as described in the lease.

City ordinance No. 140, referred to in the agreed statement of facts, limits the number and regulates the spacing, drilling, and operation of gas and oil wells and the incidental facilities within the city and, as incident thereto, provides for a fair and just participation in the limited number of wells so drilled and in the production from such wells. The ordinance likewise creates drilling blocks; provides that the lands within the corporate limits of Kimball be divided into drilling blocks designated A to O, of approximately 40 acres; and requires a permit before any drilling operation may be had on any of such drilling blocks. It then provides: "All production from any well drilled on any such drilling block, * * * shall be apportioned among and allocated to

the several separately owned tracts within such drilling block * * *."

On February 3, 1956, the governing body of the city entered into an oil and gas lease, as lessor, with Lowell J. Williamson, the intervener, as lessee. This lease provided that for and in consideration of $1,000, the receipt of which was acknowledged, the lessor, by the lease, let and granted unto the lessee the exclusive right to prospect, explore, drill for, mine, operate, produce, store, and remove from the premises oil, gas, casinghead gas, and all petroleum and gas products from land which is described in the lease constituting drilling blocks E to M, and set forth the description of the land in each drilling block, all of which land was located within the city of Kimball. The lease also provides that the lands described therein have been divided into drilling blocks under the terms and provisions of ordinance No. 140 of the city of Kimball, and that the lease shall be considered as a separate lease on each of the drilling blocks described in the lease, to the extent necessary to comply with the terms and provisions of the city ordinance. The lease, in addition, provides: "In the event it is ultimately determined that lessor is the owner of oil and gas and other minerals in and under the streets and alleyways covered by this lease, any royalties to which lessor may be entitled from any drilling block or unit shall be prorated and reduced in the proportion that the number of square feet embraced in streets and alleyways in any such block or unit shall bear to the total number of square feet embraced in such drilling block or unit and it is specifically agreed by lessor that such oil and gas and other minerals underlying said streets and alleyways covered by this lease, if owned by the City of Kimball, shall be considered and construed as unitized with all other property included and embraced in any of the foregoing units for development and operation for oil and gas purposes * * *. This lease shall be considered and construed as a non-drilling lease, which

is to say that the same is given for the purpose of unit production, as outlined above, and lessee shall not drill any test wells or set any surface equipment on streets and alleyways covered by this lease."

It is apparent from the record that the parties to this action do not question the authority of the governing board of the city to enact an ordinance such as ordinance No. 140 heretofore referred to, or to lease lands over which it has control. Such authority is derived from section 57-218, R. R. S. 1943, which provides in part: "* * * the governing board of all cities, towns, counties, * * * are respectively authorized and empowered to lease lands under their control for oil and gas exploration and development."

Section 57-221, R. R. S. 1943, provides: "Such governing boards are respectively authorized in their discretion to enter into agreements for the pooling of acreage, or any part of the acreage, covered by leases granted pursuant hereto with other acreage for the production of oil and gas, which agreements shall provide for the apportionment of oil and gas royalties on a proportionate acreage basis."

Many cities and towns in producing areas have enacted ordinances limiting the number of wells that may be drilled within defined areas, requiring pooling of small tracts, and requiring permits to drill within the corporate limits. See 1 Summers, Oil and Gas (Perm. Ed.), § 83, p. 282, note 37, and cases cited thereunder.

The intervener's petition set up the lease between the intervener and the city, and alleged, as did the plaintiff in his petition, that the plaintiff is entitled to a judgment determining that the plaintiff have and receive his proportionate share of the oil produced from what is referred to in the plaintiff's petition as drilling block E, determined upon the basis that he is the owner of the oil, gas, and other minerals in, on, and under the alleys and streets lying adjacent to the property owned by him.

The city, by its answer, contends that it is the owner of the oil, gas, and other minerals lying in, on, or under the streets and alleys located within its corporate limits, including the streets and alleys located within the boundaries of drilling block E as referred to in the plaintiff's petition, and as such owner is entitled to receive its proper share of the proceeds from all oil, gas, or other minerals produced from drilling block E.

The defendant city assigns as error the ruling of the trial court in entering judgment that the city of Kimball has no interest in the oil and gas produced from under the streets and alleys within said city, and that the judgment of the trial court is contrary to law.

While there is apparently no issue raised in the instant case as to whether or not oil, petroleum, and natural gas are minerals, we believe that it would be proper to state that the term "mineral" ordinarily embraces oil or petroleum and natural gas. See 58 C. J. S., Mines and Minerals, § 2 (4), p. 22. See, also, White v. McVey, 168 Okl. 19, 31 P. 2d 850, 94 A. L. R. 656; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; Luse v. Parmer (Tex. Civ. App.), 221 S. W. 1031; Annotation, 17 A. L. R. 156.

The sections of the statute involved in this action are 17-417 and 17-558, R. R. S. 1943. Section 17-417, R. R. S. 1943, deals with additions, plat, acknowledgment and recording, and effect. It provides: "The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use, or as is thereon dedicated to charitable, religious or educational purposes."

Section 17-558, R. R. S. 1943, deals with streets, improving and vacating the same. It provides: "Second-class cities and villages shall have power to open, widen or otherwise improve or vacate any street, avenue, alley or lane within the limits of the city or village; and also to create, open, and improve any new street, avenue,

alley or lane; Provided, all damages sustained by the citizens of the city or village, or by the owners of the property therein, shall be ascertained in such manner as shall be provided by ordinance. *Whenever any avenue, street, alley or lane shall be vacated, the same shall revert to the owners of the adjacent real estate, one half on each side thereof.*" (Emphasis supplied.)

The source of section 17-417, R. R. S. 1943, is Laws of Nebraska 1879, section 106, page 234, and of section 17-558, R. R. S. 1943, Laws of Nebraska 1879, section 69, XXVII, page 216. The language appearing in both sections heretofore referred to remains the same at all times, and there have been no amendments to either of the above-cited sections.

"The power to create a municipal corporation is vested in the legislature, and implies the power to create it with such limitations as that body may see fit to impose, and to impose such limitations at any stage of its existence." Redell v. Moores, 63 Neb. 219, 88 N. W. 243, 93 Am. S. R. 431, 55 L. R. A. 740.

As stated in Lang v. Sanitary District, 160 Neb. 754, 71 N. W. 2d 608: "Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state." See, also, County of Johnson v. Weber, 160 Neb. 432, 70 N. W. 2d 440; Seward County Rural Fire Protection Dist. v. County of Seward, 156 Neb. 516, 56 N. W. 2d 700.

"In construing statutes, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent so deduced from the whole will prevail over that of a particular part

considered separately." Lang v. Sanitary Dist., *supra.*

In the case of In re Application of Rozgall, 147 Neb. 260, 23 N. W. 2d 85, this court said: " 'Provided always that the interpretation is reasonable and not in conflict with the legislative intent, it is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. Just as an interpretation which gives effect to the statute will be chosen instead of one which defeats it, so an interpretation which gives effect to the entire language will be selected as against one which does not.' 59 C. J., Statutes, § 595, p. 995."

It is the plaintiff's contention that in the light of the foregoing authorities this court, in interpreting sections 17-417 and 17-558, R. R. S. 1943, must do so in pari materia, for the reason that both of said sections deal with the same subject matter and are a part of the same act relating to cities of the second class.

The defendant, in support of its contention, makes reference to what is now section 17-417, R. R. S. 1943, and the manner in which said section has been interpreted by this court.

In this connection, the defendant cites Carroll v. Village of Elmwood, 88 Neb. 352, 129 N. W. 537, 33 L. R. A. N. S. 1053. This was an action brought by a lot owner in the village of Elmwood to recover the value of grass or hay grown on a street of the village adjacent to his lots and appropriated by the village trustees to the use of the corporation. In July 1886, the owners of the land on which the village of Elmwood is situated duly caused the same to be surveyed and platted, and the plat acknowledged in the manner provided for by sections 8980 and 8981, Ann. St. 1909. After such acknowledgment they filed the plat for record as therein provided, and thus dedicated the streets and alleys as shown

on the plat to the public use as and for the village of Elmwood. Thereupon said village was organized and has existed and exercised the powers and duties of a municipal corporation. The plaintiff invoked the common-law rule that he was entitled to recover the value of the grass or hay growing in the village street, the natural production of the soil, appropriated by the defendants. In this opinion the common-law rule was stated as follows: "In 2 Dillon, Municipal Corporations (4th ed.) sec. 663, it is said: 'Where the public acquires only the use, and the fee remains in the original proprietor or abutter, the latter is considered to be the owner of the soil for all purposes not inconsistent with the public rights, and may maintain actions accordingly.' "

Other definitions of the common-law rule are stated in 16 Am. Jur., Dedication, § 56, p. 402: "By a common-law dedication, the fee does not pass. The public acquires only an easement or such an interest in the land as is necessary for its enjoyment of the use. The fee ordinarily remains in the proprietor, the public holding the easement in trust."

As stated in Prall v. Burckhartt, 299 Ill. 19, 132 N. E. 280, 18 A. L. R. 992: "At common law the dedication of a street or alley passed to the municipality merely an easement. The dedicator still continued to own the fee, subject to the easement. A deed of an abutting lot passed the title to the center of the street, - or included the entire street, as the case might be, - burdened, of course, with the easement."

Returning to the case of Carroll v. Village of Elmwood, *supra*, the court said: "In this state, however, a different rule prevails. Section 8982, Ann. St. 1909 (which is now section 17-417, R. R. S. 1943), * * *." The court then made reference to the case of City of Des Moines v. Hall, 24 Iowa 234, stating: "The law of Iowa on this subject is identical with the section of our statutes above quoted, and in that state it was held that laying

off and recording a town plat or an addition thereto under chapter 41 of the code of 1851 had the effect to vest in the corporation the fee-simple title to and exclusive right of dominion over the streets and alleys thus dedicated to public use, and that in such case neither the original proprietor nor his grantees have the right to the subterraneous deposits of coal within the limits of such street, and the corporation was allowed to maintain an action against the abutting lot owner for coal mined and taken by him from beneath the same." This court then said that it did not follow a rule announced in the case of City of Des Moines v. Hall, *supra,* to the extent of holding that the city would be entitled to minerals, if any should be found, underlying the surface of its streets. It might be stated at this point that the court did not have that issue before it to determine. The plaintiff contended that by the language of the dedication of the plat the original owners retained the title to the streets, and only dedicated the same to the public use. The court said: "The acknowledgment of the plat seems to be in the ordinary and usual form. It reads as follows: 'We, the undersigned owners and proprietors of the land included in the accompanying plat of Elmwood, Cass county, Nebraska, do hereby approve of the division of the grounds into lots, and ratify the said plat; and do hereby dedicate to the public use the streets and alleys as thereon shown, and in accordance with the survey thereof.' This dedication did not have the effect contended for by the plaintiff, and did not restrict the rights of the village or the public to a mere use and occupation of its streets, but was a sufficient compliance with the statute, and, when taken together with the survey, the filing and recording of the plat, operated as a conveyance of the streets designated thereon in fee simple to the corporation." The court further said: "It follows, therefore, that the village of Elmwood being the owner in fee of the streets upon which the plaintiff's lots abutted, it was entitled

to use and appropriate the grass or other natural products of the soil growing upon the surface thereof, and the plaintiff, having no legal title to the streets, could not maintain an action against the city for the conversion to its own use of any of such products."

The case of City of Wahoo v. Nethaway, 73 Neb. 54, 102 N. W. 86, was an action in ejectment instituted by the plaintiff, City of Wahoo, to recover a portion of two of its streets occupied by the defendants. The court said, quoting from Krueger v. Jenkins, 59 Neb. 641, 81 N. W. 844: " 'It would seem that there is in this state much reason for holding that incorporated cities should, in actions relating to their streets, be subject to the operation of the statute of limitations. They own in fee simple the streets, alleys and other public places within their corporate limits. * * * They may maintain ejectment to recover possession of them; they may, speaking generally, vacate them either in whole or in part.' "

In the case of Carroll v. Village of Elmwood, *supra,* this court relied upon the case of City of Des Moines v. Hall, *supra,* which was decided in 1868. In that case an action was brought by the city to recover damages for coal mined and taken by the defendant from underneath the surface of the streets of the city. The streets had been laid off and platted in conformity with the statute of the state, and the city claimed that under the statute it had the fee simple title to the streets, and having such title, it might rightfully maintain an action against the dedicator or any other person who, without its authority, mined and took coal therefrom. The defendant denied that there was any statutory dedication, but contended that if there was, in law such a dedication did not give the city the right to the coal in the streets beneath the surface. The court held that there was a statutory dedication and that the city owned the coal and minerals in the streets beneath the surface, and had a right to maintain the action.

The Iowa Code of 1851, section 637, read as follows: "The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use, or is dedicated to charitable, religious or educational purposes." It is obvious that said section conforms to what is now section 17-417, R. R. S. 1943, and the section considered in the case of Carroll v. Village of Elmwood, *supra*. The Iowa court said: "Under this section, we suppose the public would get the same grade of title to the streets that charitable, religious or educational institutions would get to lots or grounds set apart to them. They stand precisely in the same category. It would be as unreasonable, as it is against the plainest meaning of the language in this section, to allow the proprietor of a town site, after recording a plat of the same, to go upon ground dedicated to charitable and religious purposes, and strip it of its timber, or of its coal, if perchance any should be found under the surface thereof. * * * And there is just as little reason to subject the dedication of streets to like interferences from the original proprietor. * * * And we are inclined to believe that it was the object of the legislature, in withholding the title of the streets from the lot owner, divesting the proprietor thereof, and placing it in the public, to give to the corporate authorities the fullest power and control over the same, which can arise from title, in order that all improvements of them as highways might be made without let or hindrance from any quarter. At all events, it is always the better and safer course to interpret a statute according to the natural import of the language used." Judge Dillon, in overruling a petition for rehearing, among other things, said: "The true view is, that, when land has been dedicated under the statute, without reservation, and the plat has been recorded and accepted in cases where an acceptance is necessary, the dedicator or his grantee has no special proprietary rights in the soil composing the streets, but the dominion of the

streets passes to the public authorities. No other view gives effect to the strong language of the statute, * * *. It is plain from this language, that such a dedicator parts with all of his special property rights in the streets, just as effectually as does an ordinary grantor, with perhaps the exception of a right of reverter to him or his assignee, in case the street should be vacated. * * * After such a dedication, he has no more right to interfere with the street than a stranger. If the city could maintain this action against a stranger, it can equally maintain it against the dedicator or his grantee."

We have set forth Nebraska cases indicating how this court interpreted what is now section 17-417, R. R. S. 1943, and the basis for such interpretation.

The plaintiff's position is that section 17-417, R. R. S. 1943, does not convey the fee simple title of the dedicated streets and alleys to the city; it merely grants to the city the right to the use of the surface and so much of the subsurface as may be necessary for municipal purposes; and that said section merely changed the common-law rule so as to divest the dedicator of all future interest in the streets and alleys.

In the case of Village of Bellevue v. Bellevue Improvement Co., 65 Neb. 52, 90 N. W. 1002, after Bellevue was incorporated as a city, the territory embraced within its limits was surveyed and platted. By dedication, various tracts of land were conveyed by the owners to the city for streets, alleys, etc., and the fee simple title vested in the public and has ever since so remained. Later the board of trustees passed an ordinance declaring it necessary and expedient for the public good to vacate certain streets and alleys. By the terms of subdivision XXVII, section 69, article 1, chapter 14, Comp. St. 1901, it was provided: "* * * whenever any avenue, street, alley, or lane shall be vacated, the same shall revert to the owners of the adjacent real estate, one-half on each side thereof." This section of the statute is the same as what is now section 17-558, R. R. S. 1943. The court said: "The

action of the board in vacating the streets under an ordinance passed in pursuance to statute, is judicial in its nature. By subdivision 28, section 69, the board has power 'to * * * annul, vacate or discontinue' any street, avenue, alley or lane 'whenever deemed expedient for the public good,' * * *." The court held that, where a village board, acting by virtue of statute, vacates a street, avenue, alley, or lane, the land within such street or alley reverts to the owners of the adjacent real estate, one-half on each side thereof.

It will be observed that in the above case the city did vacate certain streets and alleys. That is not true in the instant case.

The plaintiff cites 26 C. J. S., Dedication, § 50, p. 523, in furtherance of his contention, to show the extent of a city's interest in a dedication such as is involved in this case, as follows: "Under a statute which provides that the fee of the streets dedicated for public use shall be deemed public property and vest in the city, it has been held that the city acquires such an estate or interest as is reasonably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes, but the city does not acquire any estate or interest in the ores beneath the street."

The case of City of Leadville v. Bohn Mining Co., 37 Colo. 248, 86 P. 1038, 8 L. R. A. N. S. 422, is cited. Section 6 of the Act of 1877 provided: "All avenues, streets, alleys, parks, and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town." The court said that "street" means more than the surface, it means the whole surface and so much of the depth as is or can be used, not unfairly, for the ordinary purposes of a street. The Legislature intended, by the use of the term "street," to vest in the city such estate or interest as is reason-

ably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes. In other words, the Legislature used the term "fee," not according to its technical legal meaning, but as vesting in the city a complete, perpetual, and continuous title to the space designated as streets, so long as it used them for the purpose intended. "It seems clear to us, therefore, that the intent and purpose of our statute is to clothe the city in its governmental capacity with the entire title to the streets, as such, for public use, and not for the 'profit or emolument of the city.' It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys, designated and described upon the plat, for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder."

The plaintiff relies on the case of Mochel v. Cleveland, 51 Idaho 468, 5 P. 2d 549. In 1899, one Holcomb and his wife dedicated certain lots and streets to the city of Lewiston. An integral part of the tract dedicated consisted of a strip 80 feet wide running north and south, the west boundary line thereof constituting the west boundary of said subdivision. In 1922, the city, by ordinance, vacated the west 20 feet of Prospect Avenue and authorized the mayor and city controller to execute quitclaim deeds to the abutting landowners of the strip of Prospect Avenue thereby vacated and abandoned. The question presented was, did the city own the fee? The respondents relied upon C. S., § 4091, which is substantially like section 17-417, R. R. S. 1943, and provides as follows: "The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use; or as is thereon dedicated to

charitable, religious or educational purposes." The court said: "This section taken from Nebraska in 1893 was theretofore appropriated from Iowa. In both states, this statute has been construed to pass to the city a fee simple absolute. (Lindsay v. City of Omaha, 30 Neb. 512, 27 Am. St. 415, 46 N. W. 627; * * *." The respondents contended that the Idaho court was bound by the statute so construed prior to its adoption by the State of Idaho. The court said, quoting from Shaw v. Johnston, 17 Idaho 676, 107 P. 399: " 'While the acknowledgment and recording is equivalent to a deed in fee simple, it is not a deed in fee simple, and does not give the public the same right to sell or dispose of the same that a private party has to land for which he holds the title in fee simple.' * * * This court has consistently held that, while the construction placed upon their statutes by other states prior to our adoption of them, is greatly persuasive, it is not conclusive. And we have in divers instances refused to adopt the foreign construction." Reference is then made to C. S., § 3963, which provides and is analogous to section 17-558, R. R. S. 1943, that when any street, alley, avenue, or lane shall be vacated, the same shall revert to the owner of the adjacent real estate. The court went on to say: "Despite the fact that Nebraska had this identical statute when she announced the construction respondents contend for, we are not satisfied with the reasoning that in effect eliminates the word 'revert' therefrom, and of necessity substitutes therefor something entirely opposite. To go back does not mean to go forward. The city had title to the lands for public use only. When that use was abandoned, what did the legislators have in mind other than that the land should 'go back' to the dedicator or his successors? * * * This we think the proper construction. Not having a fee-simple title, the city could not by deed invest respondents with one; * * *."

The cited case is distinguishable from the case at bar

in that the city did vacate a portion of a street, and as a consequence the title reverted to the adjacent property owners, as provided by statute.

The question arises as to just what type fee is here involved. We believe there are cases that are applicable to the question here presented.

In Prall v. Burckhartt, *supra*, Prall brought an ejectment suit against Burckhartt and Carrithers to recover possession of a number of pieces of land which originally comprised streets and alleys of a subdivision platted by Prall. The question whether or not the judgment of the trial court should be sustained depended very largely upon the validity of section 2 of chapter 145 of the Illinois Revised Statutes, in relation to the vacation of streets. That section provided that when any street, alley, lane, or highway, or any part thereof, is vacated, the lot or tract of land immediately adjoining on either side shall extend to the center line of such street, alley, lane, or highway, or any part thereof, so vacated. It is apparent that the Illinois statute is very similar to section 17-558, R. R. S. 1943. The plaintiff owned in fee a tract of land which he subdivided into lots, blocks, streets, and alleys, and caused a plat of the subdivision to be recorded on June 25, 1889. The streets and alleys on the plat were accepted by the city of Fort Sheridan. Fort Sheridan had an interest in the tract of land constituting the public streets and alleys, either as owner in trust for the public, or as the owner of public easements. The provisions of the plat act and the vacation act were both in force and must be considered in pari materia, and it would seem to follow that Prall, the appellee, in making and recording the plat must have done so in contemplation of not only the plat act, but also the vacation act. Section 3 of the plat act provides now, as it did in 1889, that the execution and recording of a plat shall be held to be a conveyance to the municipality, in fee simple, of the streets and alleys shown on the plat. It will be observed that this Illinois section of

the statute is quite similar to section 17-417, R. R. S. 1943. The Illinois court, in construing that section, held it was not a fee simple title absolute, but a qualified, base, or determinable fee, which may continue forever, but is determined by the vacation of the plat. The fee vests in the municipality so long, and only so long, as the land is devoted to the public use. The court said: "The crux of the question here involved is whether, when a plat is vacated, the fee in the streets and alleys reverts to the dedicator or to the one who owns the adjoining land at the time of vacation. * * * It seems to have been early considered by the legislature of this State that the public interests would be better subserved if a municipality were to have a more complete control over its streets and alleys than was possible where it had only an easement therein. Accordingly, as far back as 1833 (Laws of 1833, p. 600,) the legislature passed an act embodying substantially the same provisions as those of section 3 of the Plat act, providing that the making and recording of a plat should be held to be a conveyance of the streets and alleys in fee to the municipality. Thereafter it was found that a new difficulty arose; that from time to time conditions changed, and that it might be desirable to vacate streets and alleys which had been dedicated by plat. The dedication and acceptance had vested a determinable fee in the streets and alleys in the municipality, and the question arose what was to become of the title to the land included in such streets and alleys when they were vacated. * * * The Vacation act was thus made as much a part of the statutory law relating to the making of plats and the devolution of the title to streets and alleys shown thereon as the Plat act had been. The two acts were simply two parts of one and the same subject matter. Both acts were necessary to express the entire legislative will in respect to the devolution of the title to the streets and alleys shown on the plat. The intention of the legislature manifested by these two statutes—the Plat act and the

Vacation act—seems perfectly plain and simple. So long as the strip of ground designated as a street on a statutory plat remained a street the determinable fee was to be vested in the municipality, but as soon as the street was vacated the title was to devolve in the same manner as it would have done if the plat were a common law plat. In this way it was manifest that all controversies over abandoned and vacated streets would be eliminated. In Thomas v. Hunt, 134 Mo. 392, the court, in speaking of a statute with substantially the some provisions, said: The statute 'is founded upon the same principle of public policy as the rule which under other circumstances vests in the abutting owners, respectively, the title to the center of the street.' If both the Plat act and the Vacation act be construed in pari materia, all plats thereafter made must be construed under both acts, and the dedicator, by the making and recording of the plat in statutory form, grants to the municipality the title to the streets and alleys shown upon the plat, to have and to hold the same in fee so long as the same shall be used for streets and alleys, but upon condition that in case any street or alley shall be vacated, then the title thereto shall pass, by way of a conditional limitation, to the then owners of the lots abutting thereon.

"The legislature has the authority to provide by statute that a fee may be limited upon a fee by deed. The methods of conveyancing and the character and quality of the estates thereby created are matters which are within the control of the legislature. * * * In upholding the validity of a similar statute the Supreme Court of Missouri in Thomas v. Hunt, supra, said on page 402: 'It is entirely competent for the legislature to prescribe the legal effect of voluntary dedication of streets and to prescribe the quantity of interest in the streets the dedicator parts with as well as that taken by the public.' "

In Matthiessen & Hegeler Zinc Co. v. City of La Salle, 117 Ill. 411, 8 N. E. 81, a controversy arose in respect to the rights in streets dedicated by a plat made by the

commissioners of the Illinois and Michigan canal under the Acts of 1836 and 1837. The Illinois court there decided that the fee of such streets was in the municipality, and that the owners of lots abutting thereon had no right to tunnel under the streets for the purpose of mining coal or other minerals. There had been no vacation of any of the streets involved, and therefore the provisions of section 2 of the vacation act had nothing to do with the controversy before the court. The court held that: "The acknowledgment and recording of a plat laying out land into lots and blocks, showing thereon the streets and alleys, by the statute operates as a dedication of the fee in the streets and alleys to the municipal corporation in which they are situate, the same as if made by a conveyance in the ordinary form. * * * The fee vested in the corporation by a statutory dedication is a qualified, base or determinable fee, which may continue forever, but is liable to be determined by some event or act circumscribing its continuance, as, for instance, by the vacation of the plat, or the entire and permanent abandonment and disuse of the street by the public and abutting lot owners. * * * A party owning city lots has not the right to make a subterranean passage from one to another through the underlying soil, etc., of a public street, the fee of which is not in him, in order to mine and remove minerals, etc., even though no injury may thereby result to the street, as such." The court went on to say: "The title vested in the town by the statutory dedication is absolutely for the purpose of the statutory trust until the street shall be subsequently vacated, when it will revert to the dedicator, or, it may be, in cases like the present, to the adjacent lot owner. Possibly, at some time in the future, there may be a reverter, but this is no reversion. 4 Kent's Com. (8th ed.) 372. It is too palpable for argument, that until there is a reverter, the lot owner can have no greater right to enter upon and appropriate the soil and minerals of the street to his personal use, than a stranger,

because his right can only commence in the event and at the time that the right of the town has ended."

In Union Coal Co. v. City of La Salle, 136 Ill. 119, 26 N. E. 506, 12 L. R. A. 326, affirming 34 Ill. App. 93, upon similar facts, it was expressly held that a city having the legal title to the land in its streets could maintain trespass for the removal of underlying coal by adjoining owners, although no actual damage had been done to the surface. See, also, Trustees of Hawesville v. Hawes' Heirs, 69 Ky. 232.

In Lambach v. Town of Mason, 386 Ill. 41, 53 N. E. 2d 601, the question involved was whether the plat dedicating streets to the town of Mason complied with the mandatory statute in such respect. It was held that it did not. The court said that where the fee to a street, and not merely an easement therein, is vested in the municipality, it owns the minerals under the surface of the street and lessees of the owners of the abutting lots have no right to take such minerals, but where the owners of the lots abutting on the street own the fee to the center of the street, their leases of the street abutting the lots convey all of the oil and gas in and under, or which may be produced from, that portion of the street. The court indicated that had the plat conformed to the mandatory statute, the landowners owning land adjacent to the streets would have no title or interest to the oil and gas beneath the streets.

In construing sections 17-417 and 17-558, R. R. S. 1943, in pari materia, it becomes apparent that it was the intention of the Legislature to create a qualified, base, or determinable fee in the city which may continue forever, but is liable to be determined by some event or act circumscribing its continuance, such as vacating a street or alley. In such event the title would revert to the adjoining property owners along the street to the center thereof. Such adjacent property owners would have no interest or any title in the streets and alleys of the city of Kimball until such time as the

.streets and alleys of the city of Kimball may be vacated, as provided for by law.

We conclude that the adjacent property owners along the streets and alleys have no right or title to any oil or gas that may be beneath the streets and alleys of the city of Kimball as long as any such street or alley is used for the purpose as shown by the dedication, that is, to the public use, and not vacated by the city.

We hold that the city of Kimball has a right to share in the oil and gas which has been produced or which may in the future be produced from the streets and alleys within defendant city with the plaintiff in drilling block E, to the proportionate share as evidenced by its lease with the intervener, until such time as said streets and alleys may be vacated, as provided for by law.

For the reasons given herein, the judgment of the district court is reversed and the cause remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.