EUGENE J. VALASEK AND WANDA M. VALASEK, HUSBAND AND WIFE, APPELLANTS, V. ANN BERNARDY, A SINGLE PERSON, ET AL., APPELLEES.

495 N.W.2d 275

Filed February 12, 1993.   No. S-90-434.

Donald G. Furlow, of Schmid, Mooney & Frederick, P.C., for appellants.

Timithy Krajicek for appellees Bernardy and Bohac.

Maureen A. Doerner, of Young & LaPuzza, for appellees Chrostek and Benesh.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiffs appeal the order of the district court sustaining defendants' motion for summary judgment. The court's order quieted title in defendants to a portion of the east 20 feet of the west 40 feet of vacated Buckingham Avenue. Plaintiffs assign as error (1) the failure of the trial court to interpret and apply Neb. Rev. Stat. §§ 14-115 and 14-3,107 (Reissue 1991), (2) the failure of the trial court to grant plaintiffs' motion for default judgment against defendant Zigmond Chrostek, and (3) the

sustaining of defendants' motion for summary judgment.

The record consists of the pleadings of the parties, a stipulation of facts agreed to by defendants, various conclusionary affidavits of an official of the assessor's office of Douglas County purporting to express the position of that office as to the effect of the two vacation ordinances of the city of Omaha, an affidavit of the attorney for several of the defendants alleging the action of the assessor's office in changing certain legal descriptions, copies of two ordinances passed by the city council of the city of Omaha, and copies of various deeds on file with the register of deeds for Douglas County.

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992).

The facts as may be found in the record are not in dispute. Plaintiffs, Eugene J. and Wanda M. Valasek, husband and wife, are the record titleholders of Lots 1 through 6, Block 44; a part of Lot 7, Block 43; and a part of Lot 1, Block 56, all in the original city of South Omaha, now a part of the city of Omaha, together with portions of vacated Railroad Avenue, G Street, and H Street, all of which property is adjacent to and abuts upon the west line of the original Buckingham Avenue.

Defendants John Bernardy, a single person, now deceased, and Ann Bernardy, a single person, are the record titleholders of Lot 3, Block 45, except for the south 109.4 feet thereof. Defendants Joseph E. and Catherine P. Bohac, husband and wife, are the record titleholders of the south 109.4 feet of Lot 3, Block 45. Edward Chrostek, a single person; Zigmond Chrostek, a single person; Carl Chrostek, a single person; William Chrostek, a single person; and Walter Chrostek, a single person, now deceased, are the record titleholders of Lot 2, Block 45. Joseph J. and Margaret Benesh, husband and wife, are the record titleholders of Lot 1, Block 45. All of defendants' properties are in the original city of South Omaha, now a part

of the city of Omaha.

On June 19, 1984, upon the petition of the owners of more than 75 percent of the property abutting on the east 40 feet of Buckingham Avenue between G Street and 29th Street, the city council of the city of Omaha passed ordinance No. 30361, (first ordinance), which vacated the east 40 feet of Buckingham Avenue referred to above. It is apparent that this ordinance was passed pursuant to the authority of § 14-3,107, which provides as follows: "The city is authorized to vacate . . . any street . . . upon petition of the owners of seventy-five percent of the taxable frontage feet abutting upon such street . . . . Whenever a street is vacated . . . the part so vacated shall revert to the abutting owners on the respective sides thereof."

The terms of the first ordinance reserved to the city of Omaha the right to maintain, operate, repair, renew, and construct various utility installations, but reserved no other title.

On April 11, 1989, the city council passed ordinance No. 31757 (second ordinance) under the provisions of "Section 14-375, Reissue, Revised Statutes of Nebraska, 1943," which ordinance vacated the

> west 40 feet of Buckingham Avenue from "G" Street south approximately 310 feet to 29th Street, abutted by Lots 1, 2, 3, 4, and 5, Block 44 and vacated east 40 feet of Buckingham Avenue adjacent and Lot 1, vacated east 40 feet of Buckingham Avenue adjacent and Lot 2, vacated east 40 feet of Buckingham Avenue adjacent and (except south 109.4 feet) Lot 3, vacated east 40 feet of Buckingham Avenue adjacent and south 109.4 feet Lot 3, Block 45, South Omaha, located in the Northeast Quarter Section 4-14-13 . . . .

Again, this ordinance reserved to the city of Omaha rights to maintain, operate, repair, renew, and construct various utilities, but no other title. The second ordinance recited that a "Committee of Appraisers" had been appointed to appraise damages to property affected by the vacation and that the "Committee of Appraisers found no cause for any damages as a result of the vacation." Those findings were accepted, and that conclusion was adopted by the city council.

Neb. Rev. Stat. § 14-375 (Reissue 1991) provides as follows:

Upon the recommendation of the city planning board, the city council may, by ordinance or resolution, vacate any street . . . within any such city without any petition being filed therefor. Before any such street . . . shall be vacated, the council shall appoint a committee of at least three members thereof, who shall faithfully and impartially and after reasonable notice to the owners and parties interested in property affected by such vacation, assess the damages, if any, to such owners and parties affected. They shall take into consideration the amount of special benefits, if any, arising from such vacation and shall file their report in writing with the city clerk. . . . The award of appraisers shall be final and conclusive as the order of a court of general jurisdiction, unless appealed from.

In their petition, plaintiffs alleged the foregoing facts and, further, by reason of the first ordinance, conceded that by operation of law, defendants had acquired ownership interest in and to the east 40 feet of Buckingham Avenue abutting on defendants' real property. It was further alleged that by reason of the second ordinance, plaintiffs, by operation of law, had acquired title to the remaining 40 feet of Buckingham Avenue, "which abuts Plaintiffs' real property on the east," i.e., the west 40 feet of Buckingham Avenue, and plaintiffs prayed that the court quiet title to that property in them.

Defendants generally admitted the facts alleged by plaintiffs, but not the conclusion that plaintiffs acquired, by operation of law, title in and to the west 40 feet of Buckingham Avenue. Rather, defendants insist that plaintiffs acquired title to the west 20 feet of Buckingham Avenue, but that defendants acquired title to the remaining 20 feet of Buckingham Avenue (the east 20 feet of the west 40 feet of Buckingham Avenue), which abuts on defendants' present property, including the previously acquired east 40 feet of Buckingham Avenue obtained by operation of law as a result of the first ordinance. Defendants prayed that the court quiet title in them as to that east 20 feet of the west 40 feet of Buckingham Avenue.

Plaintiffs filed what they denominated as a "Joint Motion

for Summary Judgment," which, although signed only by plaintiffs, was treated by the parties and by the district court as a joint motion filed by both plaintiffs and defendants. In addition, plaintiffs filed a separate motion for default judgment as to defendant Zigmond Chrostek for the reason that he had failed to appear, answer, or otherwise plead to the petition.

The trial court, upon submission of the various motions, overruled plaintiffs' motion for default judgment and motion for summary judgment, but sustained defendants' motion for summary judgment. The court entered an order quieting title to the west 20 feet of Buckingham Avenue, now vacated, in plaintiffs, and quieting title to the east 60 feet of Buckingham Avenue, now vacated, in defendants.

The trial court gave no reasons for its holding. Defendants argue that upon passage of the first ordinance, vacating the east one-half of Buckingham Avenue, they acquired title to the center of the street and, therefore, under the provisions of § 14-3,107, acquired title to the entire 40 feet abutting on their western boundary, they being the only "abutting owners" at the time of vacation. This is strictly in keeping with the provisions of § 14-3,107.

Defendants then insist that the vacated east one-half of Buckingham Avenue, now a part of their property, lying along the eastern boundary of the remaining one-half of Buckingham Avenue was abutting property to that remaining one-half of Buckingham Avenue and that when the latter one-half was vacated by the second ordinance, they acquired title to the center of the remaining one-half of the vacated street. However, as a matter of fact, this vacation was accomplished under the provisions of § 14-375, which makes no provision as to reversion of title.

Plaintiffs insist that the second ordinance was passed, pursuant to § 14-3,107, "upon petition of the owners of seventy-five percent of the taxable frontage feet abutting upon such street." Therefore, pursuant to § 14-3,107, "[w]henever a street is vacated . . . the part so vacated shall revert to the abutting owners on the respective sides thereof." They claim that having been abutting owners, they acquired title to the

entire west one-half of the street.

They too overlook the obvious, because on the face of the second ordinance it is recited that "under *Section 14-375,* Reissue, Revised Statutes of Nebraska, 1943 . . . the City Council may vacate a street or alley without petition upon City Planning Board recommendation." (Emphasis supplied.)

Plaintiffs contend that the title which the city of Omaha held in the street was not a fee simple absolute, but a determinable fee. As a consequence, they say, upon abandonment of the purpose for which the city obtained title, viz, for street purposes, title reverted to the abutting landowners. They cite what they call the "polestar case" for this principle, *Seefus v. Briley,* 185 Neb. 202, 174 N.W.2d 339 (1970). Brief for appellants at 17. The court in *Seefus,* quoting *Hillerege v. City of Scottsbluff,* 164 Neb. 560, 83 N.W.2d 76 (1957), stated:

> "It is true, as appellant asserts, that it has been sometimes stated that the fee of the street is in the municipality. This form of statement was sufficient for the *facts the court was then considering* and it was not necessary for it to determine or precisely declare in those cases the exact nature of the ownership a city has of a street or the condition and qualification of its title. It is generally recognized that *under legislation such as prevails in this state* the title of a street vested in a municipality is not a fee simple title absolute but a qualified base or determinable fee and that the title which the municipality has is held in trust for the purposes for which the street is dedicated.". . .
>
> This principle is sustained in Dell v. City of Lincoln, 170 Neb. 176, 102 N. W. 2d 62, wherein it is stated: "Plaintiffs now argue that the greatest possible interest which defendant city could possess after it annexed the village of Havelock, including Sixty-ninth Street, was a fee simple determinable title, subject to being determined or diverted upon vacation of the street by defendant, which has occurred, and that plaintiffs are owners in fee simple absolute of one-half such street adjacent to their real property. We agree." See, also, Belgum v. City of Kimball, 163 Neb. 774, 81 N. W. 2d 205, 62 A. L. R. 2d 1295.

(Emphasis supplied.) 185 Neb. at 205-06, 174 N.W.2d at 342.

See, *Carter v. State*, 198 Neb. 519, 254 N.W.2d 390 (1977); *Dell v. City of Lincoln*, 170 Neb. 176, 102 N.W.2d 62 (1960). See, also, *Belgum v. City of Kimball*, 163 Neb. 774, 81 N.W.2d 205 (1957).

The *Seefus* court went on to formally recognize that "[t]he city does not own the alley in fee absolute, its interest being defined as a qualified base or determinable fee. Such city has such a title until the happening of the event which terminates its interest, in this case the vacation of the alley." 185 Neb. at 206, 174 N.W.2d at 343.

However, it is necessary to examine the italicized portions of the previous quotation, i.e., " *'facts the court was then considering'* " and " *'under legislation such as prevails in this state.'* " In *Seefus*, the vacation of the alley was accomplished under Neb. Rev. Stat. § 16-611 (Reissue 1962), which provided in part:

> When an alley is vacated *the same shall revert to the owner of the adjacent real estate* one half on each side thereof except that when any alley is taken wholly from one or more lots, upon the vacation thereof, it shall revert to the owner or owners of the lot or lots from which it was originally taken.

(Emphasis supplied.)

The holding in *Seefus* was predicated on *Hillerege*. The *Hillerege* court, in turn, quoted the following statement from *B. & M. R. R. Co. v. Reinhackle*, 15 Neb. 279, 18 N.W. 69 (1883): " 'The fee of streets is in the public; but it is held in trust for public use. The municipal corporation cannot sell or permanently obstruct the streets without compensation to the owners of property specially injured thereby. . . .' " *Hillerege*, 164 Neb. at 573, 83 N.W.2d at 84.

Neither *B. & M. R. R. Co.* nor *Hillerege* involved the vacation of streets.

*Dell, supra*, involved a quiet title action as to a portion of the vacated street of the original village of Havelock, later annexed by the city of Lincoln. This court stated:

> As recently as Belgum v. City of Kimball, 163 Neb. 774, 81 N. W. 2d 205, 62 A. L. R. 2d 1295, citing authorities, we held: "The acknowledgment and recording of a plat laying

out land into lots and blocks and showing thereon the streets and alleys, under section 17-417, R. R. S. 1943, operates as a dedication which is equivalent to a deed in fee simple to such portions of the premises platted as is on such plat set apart for streets and alleys for public use to the municipality.

"Under section 17-558, R. R. S. 1943, whenever any avenue, street, alley, or lane shall be vacated the same shall revert to the owners of adjacent real estate, one-half on each side thereof.

"A plat made and recorded in statutory form since the enactment of sections 17-417 and 17-558, R. R. S. 1943, is subject to the provisions of both sections which must be considered in pari materia.

"While the equivalent to a deed in fee simple to the streets and alleys on a plat is vested in a municipality under section 17-417, R. R. S. 1943, such fee is a qualified . . . base, or determinable fee which may be continued forever if the streets and alleys be devoted to the public use, and such fee is *determined* by the vacation of streets and alleys by the municipality as provided for in section 17-558, R. R. S. 1943." The same rules apply to sections 15-106 and 15-701, R. R. S. 1943. See, also, Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N. W. 2d 76, which involved a city of the first class. Therein we held, citing authorities, that: "The title to a street vested in a city is not *generally* a fee simple absolute but is a qualified base or determinable fee and it is held in trust for the purposes to which the street is dedicated."

(Emphasis supplied.) *Dell,* 170 Neb. at 185-86, 102 N.W.2d at 70.

All of the above-cited authorities dealing with the concept of a determinable fee were opinions written against the backdrop of statutes which specifically provided for the reversion of title to the abutting property owners upon vacation of the street. Although until 1959 there existed Neb. Rev. Stat. § 14-324 (Reissue 1954), which provided for vacation upon petition of the owners of 75 percent of the taxable front footage abutting on the lot as well as by the city council upon recommendation of the planning commission and the reversion of the vacated street

to the abutting property owners, there also existed Neb. Rev. Stat. § 14-375 (Reissue 1954), which provided for vacation by the council on recommendation of the planning commission with no mention of reversion. Section 14-324 was repealed in 1959. See 1959 Neb. Laws, ch. 36, § 46, p. 210. It was, in effect, reenacted as § 14-3,107 (Cum. Supp. 1959), which left in the requirement of a petition by the owners of 75 percent of the taxable abutting front footage and the provision for reversion of the vacated street to the abutting property owners, but made no provision for vacation solely on the recommendation of the planning commission. That section, § 14-3,107 (Reissue 1991), as well as § 14-375 (Reissue 1991), was in effect at the time of the vacations herein.

Although the record is somewhat sketchy in this regard, we can infer from it that the plat containing this property was originally dedicated as a part of the creation of the city of South Omaha, which was then annexed by the city of Omaha. As stated in *Lindsay v. Omaha*, 30 Neb. 512, 517-18, 46 N.W. 627, 628 (1890):

> Sections 104 and 105 of chapter 14, Compiled Statutes, provide for the laying out of cities, villages, and additions thereto, into lots, streets, alleys, and squares, by the owners or proprietors of land, the platting of the same, and the acknowledging and recording of the plats thereof; and section 106 provides that "[t]he acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use, or as is thereon dedicated to charitable, religious, or educational purposes."

> Some years ago, in writing the opinion in the case of *O. & R. V. R. Co. v. Rogers*, 16 Neb., 117, I made a thorough examination of the adjudicated cases of the states having statutory provisions similar, or nearly so, to our own above cited, and came to the conclusion that the fee simple title to the streets of cities or villages, which passes by virtue of the acknowledgment and recording of the plats, passes to and vests in the city or village.

> Section 56 of chapter 12*a* of the Compiled Statutes provides as follows: "The mayor and council shall have

power . . . to provide for the opening, vacating, widening, and narrowing of streets, avenues, and alleys within the city, under such restrictions and regulations as may be provided by law." This provision relates to cities of the metropolitan class, but there is also a similar provision relating to cities of the first class.

Examining Comp. Stat. ch. 12*a*, § 56 (1889), the section cited in *Lindsay*, we liken it to § 14-375; i.e., there was no requirement in the former section that a petition be filed by adjoining property owners, the mayor and city council were authorized to vacate a street under whatever restrictions and regulations might be provided by law, and it made no provision for reversion of the fee title to abutting property owners, all of which is also true of § 14-375.

Plaintiffs' claim that the city holds only a qualified base or determinable fee as set forth in *Seefus v. Briley*, 185 Neb. 202, 206, 174 N.W.2d 339, 342 (1970), must be qualified by the language of that case, " 'under legislation such as prevails in this state.' " That has obvious reference to the statutory provisions in *Seefus* and cases cited therein which specifically provided that upon vacation, title reverts to the abutting owners. Such is not the case here.

Under the rule in *Lindsay*, we must conclude that in this instance, the fee simple title remains in the city of Omaha. What authority by statute, charter, or ordinance the city has to convey or otherwise dispose of this title is not before us. However, it is abundantly clear that there was no reversion of title to either the plaintiffs or the defendants under the second vacating ordinance as authorized by § 14-375. It is unnecessary for us to discuss § 14-115 because it is not involved herein, nor is the question of a default judgment any longer of concern to a resolution of this case.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CAPORALE, J., not participating.